## HARDING & ux. vs. ALDEN.

A libel for divorce in this State, for the cause of adultery, may be tried in the county where the injured party lived at the time of the adultery, within the meaning of *Stat.* 1821, *ch.* 71, *sec.* 1.

If the husband has forfeited his marital rights by misbehavior, and has deserted his wife, they are capable of having different domicils, in view of the law regulating divorces.

A divorce may be decreed in this State, where the husband has left his wife, established his domicil in another State, and there committed adultery.

If a married woman, domiciled in another State, having been deserted by her husband, establishes her residence in this State, she thereby becomes entitled to the benefit and protection of its laws, and her rights as a married woman will be recognized.

It is not necessary, as a foundation of jurisdiction, unless made so by positive statute, that the fact of adultery should have been committed within the State in whose tribunals a decree of divorce is sought for that cause.

Where a husband deserted his wife in this State, and went into North Carolina, and she removed to Rhode Island ; after which he committed adultery in North Carolina ; for which cause she was divorced from the bonds of matrimony by the Supreme Judicial Court of Rhode Island, he having been personally cited to appear, but refusing so to do ;—it was held that the divorce was valid ; and that the wife was entitled to dower in the lands held by the husband in this State during the coverture, in the same manner as if they had both continued to reside here, and the divorce had here been decreed.

A decree of divorce does not seem to fall within the rule laid down in *Bissell v. Briggs,* 9 *Mass.* 462, that a judgment, rendered against one not within the State, nor bound by its laws, nor amenable to its jurisdiction, is not entitled to credit against the defendant in any other State than that in which it was rendered. Divorces pronounced according to the law of one jurisdiction, and the new relations thereupon formed, should be recognized, in the absence of all fraud, as operative and binding every where.

But this exception applies to the decree, only so far as it dissolves the marriage. If it proceeds farther to order the payment of money by the husband, such order would fall within the limitations laid down in *Bissell v. Briggs.*

THIS was an action of dower, which was submitted to the court upon a case agreed by the parties. It was conceded that the demandants were entitled to judgment, if the wife had been legal-

Harding & ux. *v.* Alden.

ly divorced from her former husband, to whom she was married
*May* 24, 1809, in Massachusetts, where they then dwelt; after
which they resided in this county; from which the husband de-
parted, deserting his wife, and took up a residence in North Caro-
lina, where he married another.   The wife then left this State, and
resided with her friends at *Providence*, in Rhode Island; in the
Supreme Judicial Court of which State she filed her libel for di-
vorce, at *September* term 1827; alleging the marriage, and that
her husband had deserted her and her child more than five years,
and become a resident in North Carolina, where he had married
another woman, with whom he had lived in adultery for nearly
three years; and praying for a divorce *a vinculo matrimonii.*
Whereupon, in the language of the record, "citation was issued to
the said A. (the husband) which was duly served on him in person,
and returned to this Court;" and the cause was continued to *March*
term 1828, "further notice having been given by order of this
court;" at which term, "the petition being called and heard, and
the allegations therein set forth being fully proved to the satisfaction
of this court," the divorce prayed for was decreed, and the house-
hold furniture and other articles in the wife's possession were as-
signed to her as alimony, and she was "restored to all her legal
rights resulting from this decree."   The husband was never an in-
habitant of Rhode Island.   After the decree of divorce, the pres-
ent demandants were married in Rhode Island, in which State they
have ever since resided.

*Allyn*, for the demandants, contended that the divorce, being
properly decreed according to the laws of the State of the party's
domicil, was binding every where, and entitled to full effect, as well
as the contract of marriage; both on principles of general law,
and by force of the *Stat. U. S. May* 26, 1790, giving effect to
judgments of the courts of other States, when properly authentica-
ted.   *Davol v. Howland,* 14 *Mass.* 219; *Barber v. Root,* 10
*Mass.* 260; 5 *Dane's Abr.* 214; *Bissell v. Briggs,* 9 *Mass.* 462;
*Hall v. Williams,* 6 *Pick.* 232; *Mills v. Duryee,* 7 *Cranch* 481.

Harding & ux. *v*. Alden.

*W. Abbot*, for the tenant, briefly spoke to the case at this term, and afterwards furnished a written argument to the following effect:

1st. The courts of this State will not take cognizance of a libel for a divorce under circumstances similar to those in this case. *Hopkins v. Hopkins*, 3 *Mass.* 158; *Carter v. Carter*, 6 *Mass.* 263; *Mix v. Mix*, 1 *Johns. Ch.* 204; *ib.* 389.

2d. There is no principle of law more reasonable in itself, and none more firmly established by authority, than that a judgment rendered in a foreign or sister State against a person not within its jurisdiction is void. Such is the law in England. *Buchanan v. Rucker*, 9 *East.* 192, and such also is the law of Massachusetts, *Bissell v. Briggs*, 9 *Mass.* 462. The language of *Parsons C. J.* is this; "Whenever a record of a judgment of any court of any State is produced, as conclusive evidence, the jurisdiction of the court rendering it is open to inquiry; and if it should appear, that the court had no jurisdiction of the cause, no faith or credit whatever will be given to the judgment," and further, "if a court of any State should render judgment against a man not within the State, nor bound by its laws, nor amenable to the jurisdiction of its courts, if that judgment should be produced in any other State against the defendant, the jurisdiction of the court might be inquired into, and if a want of jurisdiction appeared, no credit would be given to the judgment." " In order to entitle the judgment rendered in any court of the United States to the full faith mentioned in the federal constitution, the court must have had jurisdiction not only of the cause but of the parties. In the case of *Hall v. Williams*, 6 *Pick.* 232, the doctrine laid down in *Bissell v. Briggs* is fully recognized. *Parker, C. J.* says "if the record does not shew any service of process, or any appearance in the suit, we think, he, (the defendant) may be allowed to avoid the effect of the judgment, by shewing he was not within the jurisdiction of the court, which rendered it; for it is manifestly against first principles, that a man should be condemned criminally or civilly without an opportunity to be heard in his defense." By service of process, must be understood, a service of the writ or process upon the defendant

Harding & ux. *v.* Alden.

within the limits of the State; because neither the laws of a State nor the process of its courts operate *extra territoriam.* And the same learned Judge in the same case says, if there is no jurisdiction over his person, a judgment cannot follow him beyond the territories of the State, and if it does, he may treat it as a nullity, and the courts here will so treat it.

These principles, so equitable and just, and indeed so essential to the safety of person and property and to the due administration of justice, have been adopted in many, and probably in all the United States. *Shurber v. Blackbourne,* 1 *New Hamp. Rep.* 246; *Aldrich v. Kenney,* 4 *Conn. Rep.* 380; *Benton v. Burgot,* 10 *Sarg. & Rawle,* 242; *Shumway v. Stillman,* 4 *Cowen,* 292; *Curtis v. Gibbs, Pen. Rep.* 405; *Rogers v. Colman, Hardin,* 413.

It is understood that the court of Rhode Island ordered notice of the libel to be served upon the husband, who is described to be an inhabitant of North Carolina, and who it is agreed, was never an inhabitant of Rhode Island, but he did not appear nor answer to the libel. He was therefore not within the jurisdiction of the courts of Rhode Island nor amenable to its orders, and according to the principle above established, he might treat the decree of divorce as a nullity, at least in all other places except 'the State of Rhode Island, and it is confidently believed that this court will so treat it. But, if it may be considered a nullity and treated as such by the husband, a party to the process, and who probably had notice, yet not such as he was legally bound to regard, with much more reason may it be so deemed by the tenant, who was not a party, had no notice, and, if he had, could not have been permitted to contest the facts alleged in the libel.

Will it be said that the principle above stated is not applicable to the case of divorce? Where, it may be asked, will be found any authority for a distinction? The case of *Barber v. Root,* cited by the counsel of the demandants, will be found to contain principles favorable to the tenant. *Barber* and his wife, though married in Massachusetts resided together in Vermont, as man and wife, in a manner that proves a permanent domicil there, before the suit

was commenced ; and if a foreign divorce operate, in any case, beyond the limits of the State in which it is decreed, it must in that case, since the court of Vermont and that only had jurisdiction of the parties. And *Sewall J.* says, the laws of Vermont, which authorize the Supreme Court of that State to proceed in suits of divorce instituted in favor of persons resident for a time, but having no settled domicil within the State against persons domiciled in other States, who are not and never have been amenable to the sovereignty of Vermont, upon allegations of offences not pretended to have been committed within the State ; in short where no jurisdiction of the parties, nor of the subject matter can be suggested or supposed, are not to be justified by principles of comity which have been known to prevail in the intercourse of civilized States.

*Frances Harding* had not acquired a domicil in Rhode Island at the time the divorce was decreed. At the time her husband left her, she had an established domicil in Massachusetts, as it then was, and she was incapable of changing it, except by following her husband. 1 *Johns.* 424 ; *Jackson v. Jackson,* 5 *Vez. Jr.* 787 ; 13 *Johns.* 208 ; *Borden v. Fitch,* 15 *Johns.* 121, are cited to shew that the principle above asserted is applicable to divorces.

3d. A divorce procured in another State by parties submitting to the jurisdiction is not binding upon the courts of the native State of the parties, where the marriage was solemnized.

In support of this position 1 *Dow,* 117, cited in 13 *Johns.* 208, is referred to, where it appears in England that a divorce, when the marriage took place there, cannot be dissolved but by act of parliament, and that they will disregard a decree obtained in a foreign country ; and so was the decision of *Lolly's* case by the twelve Judges of England. See also 1 *Johns.* above cited and 14 *Mass.* 227 ; 2 *Kent's Com.* 81, *Lecture* 27, on the law concerning divorce.

4th. A widow has a right of dower in all such lands, &c., of which the husband was seized in fee at any time during the marriage. *Frances Harding* claims dower in this case under the *Stat.* 1821, *ch.* 71, and the following clause of the 5th *sec.* " And when the divorce shall be for the cause of adultery committed by the

husband ; in addition to her dower to be assigned to her in the lands of her husband, in the same manner, as if such husband was naturally dead, &c." The lands in which she claims dower had been alienated long before the divorce, and could not therefore, at that time, with any propriety be denominated the lands of her husband. They were in fact the lands of the tenant. It may be said that the words, in the same manner, &c. shew that the woman divorced was intended to have all the rights of the widow. But the latter words were introduced merely to point out the manner in which the dower was to be assigned. This construction is aided by recurring to the law of Massachusetts, as it stood before the revolution. The language in that act is, "all such lands, &c. as her husband was seized of during the marriage." *Mass. Laws, vol.* 2, *appendix* 961. The language of the *Mass. Stat.* 1785, *ch.* 69, *sec.* 5, of which ours is a transcript, could not have been so materially changed without an intention in the legislature to alter the law. It may be said that the case of *Davol v. Howland,* 14 *Mass.* 219, has settled the question. Whether this court will be disposed to re-examine that case, which stands alone, cannot be anticipated. The consequences which the court seem to apprehend in that case may easily be avoided or controlled by the court granting the divorce. If the husband, after the adultery, or after the application for a divorce, should convey his real estate, it will probably be for an equivalent; and it will be in the power of the court to make such a decree with regard to alimony, as shall control any fraudulent intentions on the part of the husband.

But this case may be distinguished from that of *Davol v. Howland.* It may be fairly gathered from that case, that the husband had conveyed the lands claimed by deed. Here the property was taken from him by the levy of executions. By the *stat.* 1821, ch. 60, sec. 27, which provides for the levying of executions on real estate, the conclusion is in these words, " saving always *to widows* their dower in all lands taken from their husbands by execution." Perhaps this saving clause may not have been necessary to protect the dower of a widow, but it shows clearly, that the legislature did

19

not mean to extend the clause to any other person than the widow. *Expressio unius est exclusio alterius.*

The opinion of the Court was read at an adjourned session in *Cumberland,* in *August* following, as drawn up by

WESTON J. The contract of marriage is of universal obligation; and by the law and practice of all civilized nations, a marriage valid by the law of the place, where it is entered into, is binding every where. *Huberus, de conflictu legum,* sec. 8, holds, that if parties domiciled in one jurisdiction, go into another, and enter into the contract of marriage, in a form and manner, and under circumstances, forbidden by the law of their domicil, and with a view to evade that law, such marriage would not there be recognised as valid. And this doctrine is supported by the opinion of *Lord Mansfield,* in *Robinson v. Bland,* 2 *Burr.* 1077. But the law has been otherwise settled in England. Thus marriages in Scotland, by parties who repair thither to evade the laws of England, where they were domiciled, are nevertheless held binding by the courts of their domicil. And the English rule has been adopted in Massachusetts. *Medway v. Needham,* 16 *Mass.* 157, *Putnam v. Putnam & al.* 8 *Pick.* 433. It is confessedly against the general principles of law, in relation to other contracts ; and this exception is allowed, to avoid the injurious consequences, which would attach to the innocent from a different rule, as well as the unfavorable effect, it would have upon public morals.

With regard to the law of divorce, there is less uniformity. In general the policy of the law, in Christian countries, has been against it, except for adultery. For this cause divorces are allowed by some judicial tribunal, clothed with competent authority, in almost every State in the Union. In some of the states this authority is limited by statute. Thus in New York, it is allowed only if the parties, at the time of the offence, be inhabitants of the state ; or if the marriage had taken place in that state, and the party injured be resident there, at the time of the adultery committed.

The statute of Massachusetts, and of Maine, contains no such

limitation, but directs that all questions of divorce and alimony should be heard and tried in the county, where the parties live. But from the construction and practice, which has obtained under this statute, this may be understood to mean, where the party injured lives, at the time of the adultery. The case of *Richardson v. Richardson, 2 Mass.* 153, was placed upon the ground, that an attempt was made to evade the statute; but it was there intimated that the decision was not to be understood to apply to a case, where the party charged with adultery, shall have left his or her domicil. In *Hopkins v. Hopkins, 3 Mass.* 158, the chief justice expressly states, that all the court decided was, that if the parties live in another state, and one of them commits adultery there, and the injured party removes into Massachusetts, and libels for a divorce, that such libel could not there be sustained. *Carter v. Carter, 6 Mass.* 263, presented such a case, and the libel was dismissed. Under the pauper laws, and upon general principles, the wife is regarded as having the domicil of her husband; but this results from his marital rights, and the duties of the wife. If the husband has forfeited those rights by misbehavior, and has left and deserted the wife, they may have different domicils, in the view of the law regulating divorces. The statute assumes that the guilty party may be out of the state, and makes provision in that case. And in *Hopkins v. Hopkins* the court say, that the statute applies, where such party has changed his domicil, and the adultery is there committed. This may be, and generally is, the husband; and yet for the purpose of sustaining a libel, the former domicil of the wife is regarded as continuing. Divorces have repeatedly been decreed in this state, where the husband has left his wife, established his domicil in another state, and there committed adultery, by a new marriage or otherwise. There seems to be no good reason, why she should be limited to the county, in which she resides, at the time when her husband may have left her. She may find it convenient, and even necessary, to change her residence; and it would better accord with the statute that she should libel, where she lives at the time of the adultery. And if a married woman, domiciled in another State,

having been left or abandoned by her husband, finds it convenient to establish her residence in this state, she thereby becomes entitled to the benefit and protection of our laws. Her relation as a married woman, and her rights thence resulting, would be recognized. And if her husband subsequently committed adultery in another State, why should the court here, upon a verification of the facts, after such notice as they might order, refuse to liberate her from a husband, who had proved himself unworthy to sustain the relation? Upon this point however we reserve ourselves, until a case, so circumstanced, may present itself in our own State.

But if the laws of any State, authorize divorces in such cases, we perceive nothing in them, which violates the comity due to other States, or which offends public morals. It has never been held necessary, that the offence should be committed, within the jurisdiction making the decree; as it is in the administration of criminal justice. If we refuse to give full faith and credit, to the decree of the Supreme Judicial Court of Rhode Island, because the party libelled had his domicil in another State, and was not within their jurisdiction, we refuse to accord to the decrees of that court the efficacy we claim for our own, when liable to the same objection.

In the case before us, it is agreed that the party injured was at the time an inhabitant of Rhode Island, residing in *Providence,* and this fact is recited in the decree. It appears that by order of court a citation was served upon the defendant in person; and that a continuance was twice granted, to give him an opportunity to appear in defence. This shows a due regard to that principle of justice, which gives to the party accused, the right to be heard. The decree was rendered by the highest judicial tribunal in that State. As it belongs to that tribunal to declare, authoritatively and definitively, what the law of the State is, we are bound to infer that by that law, the bonds of matrimony, previously existing, between the libellant and her former husband, were thereby dissolved; and that such is the effect of the decree, within the State of Rhode Island. As the law is understood in England, an English marriage cannot be dissolved by a foreign tribunal; and the reason given is, that a mar-

riage is indissoluble in England, except by act of parliament; and that in these cases, the *lex loci contractus* is to govern. *Tovey v. Lindsay*, 1 *Dow's Rep.* 117. That was upon an appeal from Scotland, where the law had been otherwise settled.

The marriage dissolved, for the cause of adultery, by the decree in question, was solemnized in Massachusetts, which, as well as our own State, allows divorces for this cause; so that the divorce insisted on is for a cause, in accordance with the law of both States. Had it been otherwise, it would not follow, that the divorce might not have been valid, under the constitution and laws of the United States. By the federal constitution it is provided, art. 4, sec. 1, that " full faith and credit shall be given, in each State, to the public acts, records, and judicial proceedings of every other State. And the Congress may, by penal laws, prescribe the manner, in which such acts, records and proceedings shall be proved, and the effect thereof." In pursuance of this provision, the act of Congress, of *May* 26, 1790, has declared that the records and judicial proceedings of other States, authenticated in the manner prescribed, " shall have such faith and credit, given to them in every court within the United States, as they have by law or usage, in the courts of the States, from whence the said records are, or shall be taken."

In *Mills v. Duryee*, 7 *Cranch*, 481, and in *Hampton v. McConnel*, 3 *Wheaton*, 234, the Supreme Court of the United States have given a literal construction to the act of Congress, and have declared, that the judgments and decrees of a judicial tribunal in one State, shall have equal force and effect in every State. The efficacy of the act of Congress to this extent, has been qualified by judicial construction, in several of the States; and in Massachusetts, by the case of *Bissel v. Briggs*, 9 *Mass.* 416, and by *Hall v. Williams*, 6 *Pick.* 232; the one prior, and the other subsequent to the decisions of the Supreme Court of the United States, before cited. The latter case reaffirms the position taken in *Bissel v. Briggs*, and relies upon part of the opinion of Mr. Justice *Story* in *Mills v. Duryee* to sustain them. The qualification insisted upon is, that if a judgment be rendered in a State against a man not within that

State, nor bound by its laws, nor amenable to its jurisdiction, and that judgment should be produced in any other State against the defendant, it would be entitled to no credit. Chief Justice *Parsons*, who gave this opinion in *Bissel v. Briggs*, concedes that such judgment would bind any property the defendant might have, within the State rendering the judgment, taken under process of foreign attachment. In this case the injured party, then an inhabitant of Rhode Island, sought to be liberated from the claims of the husband upon her, arising from the conjugal relation, which he had forfeited. It was his interest in her, his right to exact from her the performance of duties, upon which the decree operated. She was within the jurisdiction. By the condition implied in the marriage contract, that neither party should commit adultery, she was entitled to be thus relieved. She being under the protection of the laws of the State, where she resided, the highest tribunal there, judicially declared and settled her right, after due notice, and ample opportunity, afforded to the guilty party, to defend himself against her charge.

Under these circumstances, it does not appear to us to fall within the qualification of the rule, established by the Supreme Court of the United States, set up in the cases cited from Massachusetts, even if it is to be sustained to the extent there stated, which has not yet been decided by the court, to whom it ultimately belongs to settle the question.

A divorce for the cause of adultery, does not violate or impair the contract of marriage. This was intimated by Chief Justice *Marshall* and by Justice *Story* in the case of *Dartmouth College v. Woodward*, 4 *Wheaton*, 518. The law of Rhode Island, authorizing the divorce, was not therefore restrained or limited, by any paramount law. It was then lawful there, and qualified the party liberated, to enter anew into the marriage relation. Most of the reasons, which led to the adoption of the rule, that a marriage valid by the law of the place where solemnized, should be valid every where, the protection of innocent parties, and the purity of public morals, require that divorces lawfully pronounced in one jurisdiction, and the new relations thereupon formed, should be recognized as

operative and binding every where. To this may be excepted cases of fraud and collusion, which, when pleaded and verified, vacate all judgments and decrees. And of this class, are decrees, obtained in fraud of the law of the domicil of the parties. *Jackson v. Jackson*, 1 *Johns.* 424, and *Hanover v. Turner*, 14 *Mass.* 227, were decided upon this ground.

There would be great inconvenience in holding that a divorce decreed in the State, where the injured party resided, might not be held valid through the Union, where the right of citizenship is common, where the party accused had established his domicil in another State, and there committed adultery. And this is the only objection to the efficacy of the decree in question; it being insisted that the court had no jurisdiction over the absent party. As has been before intimated, it would apply with equal force to many divorces decreed in this State. It would require that the wife, abandoned and dishonored, should seek the new domicil of the guilty husband, *animo manendi*, before she could claim the benefit of the law, to be relieved from his control.

In giving effect here to the divorce decreed in Rhode Island, we would wish to be understood, that the grounds upon which we place our decision, is limited to the dissolution of the marriage. In the libel, alimony was prayed for; and certain personal property, then in the possession of the wife, was decreed to her. Had the court awarded her a gross sum, or a weekly or an annual allowance, to be paid by the husband, and the courts of this or any other State had been resorted to to enforce it, a different question would be presented, falling within the distinctions, which have been supposed to qualify the decisions of the Supreme Court of the United States.

If then the divorce, decreed in Rhode Island, is valid here, the remaining question is, whether the wife was thereupon entitled to draw in any estate of inheritance, of which the husband was seized, during the coverture. The statute allows it, in the lands of the husband, where a divorce is decreed for the cause of adultery, committed by the husband, to be assigned in the same manner, as if he were dead. The language is general, and is not limited to divorces

decreed within the State.    But it is insisted, that her right must be restricted to such lands, as the husband had not aliened.    And this construction is attempted to be supported, by a reference to a change of language, in a former revision of the laws of Massachusetts, upon the subject of divorce.    But if her right was to be thus restricted, we apprehend more explicit language to this effect, would have been used.    By the lands of the husband, must be understood all the lands, in which she had an inchoate right of dower, prior to the divorce.    And thus the law was settled in *Davol v. Howland*, 14 *Mass.* 219.    The levies on the lands of the husband by his creditors, vested such lands in them, subject to the right of dower in the wife.    That right did not arise from the saving in the statute, authorizing such levies.    And if there might be room for doubt, if we looked only to the saving, there is none under the general law, upon which her right depended.        *Judgment for the demandants.*