### BARRETT *v.* FAILING and another.

*(Circuit Court, D. Oregon.* June 27, 1880.)

1. DIVORCE—FOREIGN DECREE—OREGON CODE OF CIVIL PROCEDURE, § 495.—Section 495 of the Oregon Code of Civil Procedure provides that " whenever a marriage shall be declared void, or dissolved, the party at whose prayer such decree shall be made shall, in all cases, be entitled to the undivided one-third part in his or her individual right, in fee, of the whole of the real estate owned by the other at the time of such decree, * * * * * * and it shall be the duty of the court, in all such cases, to enter a decree in accordance with this provision." *He'd,* that a decree of divorce obtained in another state did not come within the purview of this section, so as to affect the title to lands within the state of Oregon.

In Equity. Demurrer to Bill.
*Sidney Dell* and *W. Scott Bebee,* for plaintiff.
*William Strong,* for defendants.

DEADY, D. J. This suit is brought to establish the right of the plaintiff to the undivided one-third of the west half of lots 7 and 8, in block 63, in the town of Portland, the same being of the value of $2,000, and for an account of the rents and profits thereof during the past six years. It appears from the bill that on September 25, 1866, the plaintiff, then a resident and citizen of California, commenced a suit in the court of that state to obtain a divorce from her husband, Charles Barrett, then a resident and citizen of Oregon, and on April 1, 1870, obtained a decree therein dissolving the bonds of marriage between herself and husband; that at the date of the commencement of said suit said Barrett was the

owner of the premises aforesaid, and that on or about February 4, 1868, he conveyed said premises to his daughter, the defendant Xarifa J. Failing, with intent to prevent the plaintiff from acquiring any right in the premises by said decree; that at the commencement of said suit for divorce the plaintiff did not know that said Barrett was the owner of said premises, and that he died shortly after the decree of divorce was obtained; that said Xarifa has been in the possession of said premises for the past six years, and received the rents and profits thereof, amounting to $500 per annum.

Upon these facts the plaintiff claims that by the laws of Oregon, and by virtue of the decree aforesaid, she became and was entitled to one-third of the premises. This claim is made under section 495 of the Oregon Code of Civil Procedure, which provides that "whenever a marriage shall be declared void, or dissolved, the party at whose prayer such decree shall be made, shall, in all cases, be entitled to the undivided one-third part in his or her individual right, in fee, of the whole of the real estate owned by the other at the time of such decree, in addition to the further decree for maintenance provided for in section 497; and it shall be the duty of the court, in all such cases, to enter a decree in accordance with this provision." As it originally stood in the Code, this section simply provided that upon the dissolution of a marriage the real property of the parties should be discharged from any claim or interest of the other therein; provided, if the marriage was dissolved on account of the adultery or conviction of a felony of either party, then the innocent party should be entitled as tenant in dower, or by the curtesy, as the case might be, in the real property of the other, the same as if that other were dead. The statute declared this to be the legal effect and operation of the decree, and it was neither necessary nor proper that the pleadings or decree should allege or contain anything on the subject. The section was amended as it now stands on December 20, 1865, and the purpose of it is manifest. It is to give the prevailing and so far innocent party in this suit, in all cases—no matter what the cause of divorce—absolutely one-third of the other's real property, as

a result and effect of the decree dissolving the marriage, instead of mere dower or curtesy in certain cases.

But, by adding the clause to the amended section requiring the court to make provision in the decree concerning this third, the matter is unnecessarily complicated, and some doubt is raised as to what is the effect of the decree where no such provision is contained in it.

In *Bamford v. Bamford,* 4 Or. 30, it was held that where the complaint and decree in a suit for divorce are silent as to the property of the defendant, the party obtaining the divorce acquires no right in the property of the other. And this conclusion seems to rest mainly upon the assumption that it is necessary to the security and certainty of titles that a description of the land to be affected by the decree should be contained in it, and therefore the legislature is presumed to have intended that it should be done. But nothi , is gained in this respect by attempting to specify the lands to be affected by the decree; for, if you undertake to describe them, there is the chance of mistake or omission, while, if nothing is said, the decree affects all the lands of the party in fault, with the certainty of the lien of a docketed judgment. As well object to the lien of a judgment because the property affected by it is not described in it, and depends upon the extrinsic fact of the ownership of the judgment debtor, or the operation of a will by which the testator devises and passes the title of all the property owned by him in the state of Oregon, without naming or describing any particular parcel of it. Besides, there may be a question as to what property does belong to the party against whom the decree is obtained, and in such case third persons would be necessary parties to its final determination. But it is neither proper nor convenient that such questions should be litigated in the suit for divorce, or that third persons should be thus made parties to a controversy between the husband and wife in which they have no interest.

In the subsequent case of *Wetmore v. Wetmore,* 5 Or. 469, the court went further towards sustaining the statute, and held that it was peremptory as to the right of the party ob-

taining the divorce in the land of the other, and also the duty of the court to make the decree accordingly; but did not decide what effect, if any, the omission to provide for the matter in the decree would have upon such right. However, in my judgment, the amended section, like the original one, gives the right upon the entry of the decree, without any mention of it being made therein, and that the clause in the former, concerning the nature of the decree to be entered, is, so far as this matter is concerned, merely cumulative, and that in no event need there be any allegation or proof concerning the lands to be affected by the decree; but only, if there is a decree for a divorce, that it shall contain a provision to the effect that the party obtaining it is thereupon and thereby entitled to one-third of the real property then owned by the other, whatever it may be. If any question should arise as to what property was so owned by such other, it can, as it should be, determined by appropriate proceedings between the parties interested.

If, then, the decree of divorce in *Barrett* v. *Barrett* had been pronounced by a court of this state, in a proceeding under title 7 of its Code of Civil Procedure, concerning "suits to declare void or dissolve the marriage contract," I should have no hesitancy in holding that this suit could be maintained, unless the ruling in *Bamford* v. *Bamford, supra,* should prevent me.

But counsel for the plaintiff go further, as they must, to maintain this bill, and contend that the right conferred by said section 495 on the prevailing party in the lands of the other is given to such party, not only by the mere operation of the statute, and as a result of the decree, and not by it, but in all cases of divorce, whether obtained in the courts of this state, under its Code of Procedure, or elsewhere; that the declaration in said section 495, "whenever a marriage shall be declared void or dissolved, the party at whose prayer such decree shall be made, shall, in all cases, be entitled to the undivided one-third part * * of the whole of the real estate owned by the other at the time of such decree," is a general rule, of universal application, like the provision in the statute

of descents, declaring that whenever any person shall die intestate, and seized of real property, it shall descend to certain persons; or that of dower, which declares that the widow of every deceased person shall be entitled to dower in the inheritance of her husband; and cite *Harding et ux.* v. *Alden,* 9 Me. 140; *De Godey* v. *Godey,* 39 Cal. 157, 161; *Whetstone* v. *Coffey,* 48. Tex. 269.

In Texas and California the civil law is so far in force that property acquired during the marriage, otherwise than by gift, devise, or descent, is common property; that is, it belongs to the matrimonial community, the husband and wife, equally, subject to the right of management on the part of the husband during coverture. The cases cited from these states only decide that when a decree of divorce is declared, and no disposition is made of the community property, the wife may assert her right to her interest in it in another suit before another court of the same state; and this, although the statute of the latter state provided that, in case of the dissolution of the marriage by the decree of the court, "the common property shall be equally divided between the parties, and the court granting the decree shall make such order for the division of the common property." But the question whether a decree of divorce obtained in another state—a foreign decree—comes within the operation of this section 495, so as to affect the title to lands in this state, these cases do not decide.

The case in 9 Maine goes further, and holds that under the law of that state, which provided generally that when a divorce was decreed for the adultery of the husband the wife should be entitled to dower the same as if he were dead, a wife divorced in Rhode Island for the adultery of the husband, committed in North Carolina, was entitled to dower in his lands in Maine. The contest in the case was principally as to the validity of the Rhode Island divorce, and, assuming that to have been valid, her right to dower was allowed without much consideration, the court being apparently controlled by the fact that the provision was general, "and not limited to divorces decreed within the state."

And so the question of what was the legislative intent in the case of the Oregon statute must be determined mainly upon its own language and circumstances. In this connection weight must be given to the fact that said section 495 occurs in a code of procedure, and in that division of it which authorizes and regulates the granting of divorces in and by the courts of the state only, and not in a general statute, defining or prescribing the rights of husband and wife, as such, in the lands or property of each other. Although, then, the statute does say that the prevailing party shall "be entitled in all cases" to a third of the other's land, yet the question arises, in what all cases? Is it all the cases of divorce brought and determined under this code in the courts of Oregon, and for the causes therein prescribed and allowed, or does the phrase include all the cases decided under any code in any country and for any cause?

In my judgment the statute only comprehends all the cases provided for in it, and which may be said to arise, or at least be determined under it, and in the courts whose procedure is regulated by it. By the Code, § 266, a judgment "in any action" is authorized to be docketed, whereupon it becomes a lien upon the property of the judgment debtor in the county. The phrase "any action" is quite as comprehensive as *all actions;* but can it be supposed for a moment that under the circumstances it includes a judgment given in any other state or country, or that any judgment was in the contemplation of the legislature, other than those authorized and provided for in the code in which the provision occurs?

It may be admitted that the legislature has the power to provide that a decree of divorce, pronounced in the courts of another state, shall have the same effect upon the real estate property of the parties in this state as if given here, or that a judgment given in a foreign forum might be docketed here with the same effect as if given in the courts of the state.

But is not to be inferred that the legislature intended to make any such extraordinary provisions from the bare use of language which is fairly satisfied when confined to domestic decrees and judgments, and only occurs in a code of proced-

ure made to regulate judicial proceedings in the courts of the state. The results which would follow from allowing a decree of divorce in another state to have the same effect upon the property of either within this state as if given here, are sufficiently serious to prevent such a conclusion, unless the statute was plain and peremptory to that effect.

Divorces may be and are allowed in other states and countries for causes and under circumstances not allowed here, and contrary to the public policy and morals of the state. But if section 495 is taken absolutely, and construed to include all cases of a decree for divorce given as well without the state as within it, then such divorces, although granted contrary to the laws and policy of this state, would nevertheless be allowed an extra-territorial force and effect within it; and often, as in this case, against the property of its own citizens.

Aid is sought to be given to the claim of the plaintiff by invoking the rule prescribed in article 4 of the national constitution, and act of congress, passed in pursuance thereof, of May 26, 1790, (1 St. 122,) which in effect declares that the judgments of each state shall have the same credit and effect in every other state that they have in the state where they were given. But it is admitted that the decree of the California court is valid and effectual here as a decree of divorce, and that is all the effect it has in that state. The law of California, unlike that of this state, does not provide that a decree of divorce shall work a transfer or forfeiture of one-third of the real property of the one party to the other, and if it did could have no extra-territorial effect, but would be confined in its operation to the property of the parties within that state.

The plaintiff's decree of divorce, although valid and effectual, as such, can have no operation or effect upon real property in this state, except with its consent declared in its laws. If this decree was within the purview of the provision in section 495, I think this suit could be maintained. But, in my judgment, that not being the case, the demurrer to the bill must be sustained; and it is so ordered.