MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 122
Docket:      Yor-18-509
Argued:      June 25, 2019
Decided:     July 30, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

MARK BELLIVEAU

v.

JANET WHELAN

JABAR, J.

[¶1]   Mark Belliveau appeals from the District Court's (Biddeford, *Sutton, J.*) dismissal of his complaint for divorce from Janet Whelan because the parties were never legally married.  Belliveau argues that the court erred by declining to adopt the putative spouse doctrine or the doctrine of marriage by estoppel.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The following facts were found by the court following a hearing on September 17, 2018, and are fully supported by the record.  In May 1992, Belliveau and Whelan traveled to England to be married.  Upon arriving, they attempted to obtain a marriage license from the local town hall, but were denied a license because they did not meet the residency requirement.  Despite

this, Belliveau and Whelan went ahead with their planned wedding ceremony, which was officiated by a friend who was neither a minister nor an official authorized to solemnize marriages there.  Upon their return to Maine, Belliveau and Whelan held a "wedding reception," but did not seek or obtain a marriage license in Maine, nor did they take any other steps to create a valid marriage.

[¶3]   Over the next twenty-six years, Belliveau and Whelan held themselves out to others as a married couple.  Their son, now twenty, has believed, and continues to believe, that Belliveau and Whelan are married.  Belliveau and Whelan filed joint income taxes, signed medical insurance documents as a married couple, and signed and had notarized a "Property Ownership Agreement" that characterizes them as "husband and wife."  This agreement indicates that, in the event of a divorce, Whelan would retain exclusive ownership of the property.

[¶4]  In March 2017, Belliveau filed a complaint for divorce.  In response, Whelan asserted that the parties were never legally married and sought a dismissal of the complaint.  After holding an interim hearing, the court agreed with Whelan and dismissed the complaint.  Belliveau timely appealed.

## II. DISCUSSION

[¶5]  In Maine, the requirements for a valid marriage are provided by statute.  *See* 19-A M.R.S. §§ 650-753 (2018).  On this basis, we have declined to recognize common law marriage and have continuously left policy decisions regarding marriage and divorce to the Legislature.  *See State v. Patterson*, 2004 ME 79, ¶ 13, 851 A.2d 521 ("Maine does not recognize common law marriage."); *Pierce v. Sec'y of U.S. Dep't of Health, Educ. & Welfare*, 254 A.2d 46, 47 (Me. 1969) ("Sound public policy dictates that there be a minimum of uncertainty as to whether or not a [valid] marriage exists.  The meeting of statutory requirements has this desirable effect."); *Miliano v. Miliano*, 2012 ME 100, ¶ 21, 50 A.3d 534; Levy, *Maine Family Law* § 7.13 at 7-80 (8th ed. 2013).

[¶6]  There is no dispute that Belliveau and Whelan did not comply with the statutory requirements to enter into a valid marriage.  *See* 19-A M.R.S. §§ 651-52, 654-56.  Belliveau asks us to create an end-run around those requirements by adopting one, or both, of two equitable doctrines—the putative spouse doctrine or the doctrine of marriage by estoppel.  *See Williams v. Williams*, 97 P.3d 1124, 1126 (Nev. 2004) (describing the putative spouse doctrine); *Lowenschuss v. Lowenschuss*, 579 A.2d 377, 381-82 (Pa. Super. Ct.

1990) (describing the doctrine of marriage by estoppel).[1] Because the adoption of either of these doctrines by us would be an infringement on the Legislature's function and "would only introduce new uncertainties into our law," *Grishman v. Grishman*, 407 A.2d 9, 12 (Me. 1979), we decline to do so.

The entry is:

Judgment affirmed.

---

Dana E. Prescott, Esq. (orally), Prescott Jamieson Murphy Law Group, LLC, Saco, for appellant Mark Belliveau

James B. Smith, Esq. (orally), Woodman Edmands Danylik Austin Smith & Jacques, P.A., Biddeford, for appellee Janet Whelan

Biddeford District Court docket number FM-2017-125
FOR CLERK REFERENCE ONLY

---

[1] Other jurisdictions vary in their treatment of these doctrines. In some states, the legislature has adopted the putative spouse doctrine, or some version of it, by statute. *See, e.g.,* Alaska Stat. § 25.05.051 (LEXIS through 2019 SLA, ch. 5); Cal. Fam. Code § 2251 (Deering, LEXIS through Ch. 1-6, 18, 22-23 of 2019 Reg. Sess.); Colo. Rev. Stat. § 14-2-111 (LEXIS through 2018 Legis. Sess.); Minn. Stat. § 518.055 (LEXIS through ch. 2 of 2019 First Special Sess.); Tex. Fam. Code Ann. § 8.060 (LEXIS through 2019 Sess.); *see also* Unif. Marriage & Divorce Act § 209 (Unif. Law Comm'n 1973). In other states, courts have judicially adopted one or both of the doctrines. *See, e.g., Williams v. Williams*, 97 P.3d 1124, 1128-29 (Nev. 2004); *Xiong v. Xiong*, 648 N.W.2d 900, 905-06 (Wis. Ct. App. 2002); *Martin v. Coleman*, 19 S.W.3d 757, 760-61 (Tenn. 2000); *Lowenschuss v. Lowenschuss*, 579 A.2d 377, 381-82, 386 (Pa. Super. Ct. 1990); *Chrismond v. Chrismond*, 52 So. 2d 624, 628-29 (Miss. 1951). Yet, in other states, courts have declined to adopt the doctrines in deference to the legislature's policy-making function. *See, e.g., Hill v. Bell*, 747 S.E.2d 791, 791-93 (S.C. 2013); *Watts v. Watts*, 405 N.W.2d 303, 309 (Wis. 1987); *Goldin v. Goldin*, 426 A.2d 410, 412-13 (Md. Ct. Spec. App. 1981).