MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2026 ME 38
Docket:        Yor-25-46
Argued:        October 9, 2025
Decided:       April 23, 2026

Panel:         STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

# TABAREK T. H. ALDARRAJI

## v.

# TAREQ I. ALOLWAN

LIPEZ, J.

[¶1]  Tabarek T. H. Aldarraji appeals from a judgment of the District Court (Biddeford, *Sutton, J.*) dismissing her divorce complaint against Tareq I. Alolwan on the grounds that the parties were not legally married.  Aldarraji argues that she and Alolwan were legally married under Maine law.  Because the parties' marriage ceremony did not occur in Maine, however, the proper question in assessing the legality of the marriage is whether it was valid under the laws of the jurisdiction where the marriage ceremony occurred—here, the United Arab Emirates.  Both at trial and on appeal, Aldarraji has failed to address this question.  She accordingly has waived her ability to do so.  We affirm the judgment.

2

## I. BACKGROUND

### A.    Facts

[¶2]  The following findings of fact are supported by competent evidence from the hearing record.  *See McKenna v. Pray*, 2024 ME 58, ¶ 3, 320 A.3d 415.

[¶3]  Alolwan was born in Saudi Arabia and is a dual citizen of Saudi Arabia and the United States, having moved to the United States in 2006. Aldarraji came to the United States from Iraq in 2018.  The parties met in 2019, and later that year they traveled to Dubai, United Arab Emirates, for a religious marriage ceremony.  There was no religious official physically present with the parties in Dubai; an imam affiliated with a mosque in Biddeford, Maine, officiated the ceremony remotely.  The ceremony was performed according to the laws of the parties' Islamic faith, and after the ceremony the imam provided them with a certificate of religious marriage.

[¶4]  Soon after, the parties had a wedding reception in Turkey, and on January 16, 2020, while in Turkey, the parties and two witnesses signed the certificate of religious marriage that the imam had provided them.  The parties then returned to Maine.  They never participated in a marriage ceremony in Maine nor took any steps to validate their marriage in accordance with Maine

law, although Aldarraji went to the Biddeford City Hall and tried unsuccessfully to "certify" her marriage just before filing for divorce.

## B.    Procedure

[¶5]  On April 17, 2024, Aldarraji filed a complaint for divorce.  Alolwan filed a motion to dismiss the complaint on the basis that no lawful marriage existed between the parties.  The court held an evidentiary hearing and later issued a written order granting Alolwan's motion to dismiss.  The court concluded that although the parties had participated in a valid religious marriage ceremony, they had not complied with Maine's statutory marriage requirements and therefore had "failed to establish a legal marriage in Maine." Nor, according to the court, were the parties legally married "anywhere else." Aldarraji timely appealed.  *See* M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶6]  "[W]e have declined to recognize common law marriage" in Maine, instead leaving "policy decisions regarding marriage and divorce to the Legislature." *Belliveau v. Whelan*, 2019 ME 122, ¶ 5, 213 A.3d 617.  "[T]he requirements for a valid marriage are provided by statute," *id.*, specifically 19-A M.R.S. §§ 650-753 (2025).[1]  Generally, a couple seeking to become married

---

[1] The Legislature amended these provisions several times between the parties' religious marriage ceremony in 2019 and the date of the hearing.  *See* P.L. 2019, ch. 535, § 1 (effective June 16, 2020)

4

under Maine law must first record their intention to be married by submitting a marriage application to a municipal clerk or the State Registrar of Vital Statistics. *Id.* § 651(1)-(2). The clerk or Registrar then issues the parties a marriage license. *Id.* § 652(1). The couple is then free to marry, and the ceremony must be solemnized by a person authorized by law to do so and must occur in the presence of at least two other witnesses. *See id.* §§ 651(1), 655(1), 656(2). The marriage becomes legal once certain information, including the location and date of the ceremony, has been documented on the marriage license and the license has been signed by the couple, the witnesses, and the officiant. *See id.* §§ 654(3), 656(2). Finally, within fifteen "working days" of the date of solemnization, the marriage license must be returned to the clerk or Registrar.[2] *Id.* § 654(2).

---

(codified at 19-A M.R.S. § 652); P.L. 2021, ch. 49, §§ 1-2 (effective Oct. 18, 2021) (codified at 19-A M.R.S. §§ 651, 656); P.L. 2021, ch. 651, §§ B-3 to B-7 (effective July 1, 2023) (codified at 19-A M.R.S. §§ 654-655, 657); P.L. 2023, ch. 116, §§ 1-2 (effective Oct. 25, 2023) (codified at 19-A M.R.S. § 652). None of these amendments substantively changed the general process couples were required to follow to be validly married under Maine law. Additionally, several of these provisions have been amended since the hearing. *See* P.L. 2025, ch. 47, §§ 1-2 (effective Sep. 24, 2025) (to be codified at 19-A M.R.S. § 652); P.L. 2025, ch. 130, §§ 1-8 (effective Sep. 24, 2025) (to be codified at 19-A M.R.S. §§ 651-654, 656, 660). Those amendments also do not affect our analysis in this appeal.

[2] At the time of the parties' religious ceremony, the marriage license had to be returned to the clerk or Registrar within seven days of solemnization of the marriage. *See* 19-A M.R.S. § 654(2) (2020). This period was increased to fifteen days in 2025. *See* P.L. 2025, ch. 130, § 4 (effective Sep. 24, 2025) (to be codified at 19-A M.R.S. §§ 651-654, 656).

[¶7]   Although Aldarraji does not argue that she and Alolwan complied with this procedure, she contends that her religious marriage to Alolwan was nonetheless valid under Maine's statutory scheme.  For support, she relies on two provisions of Title 19-A that allow for exceptions to the general rules: section 657, which provides that a marriage that is "in other respects lawful" is valid even if the solemnizing official lacks jurisdiction or authority or there exists an "omission or informality" in the process the parties followed; and section 658, which exempts Quakers or Friends and members of the Baha'i faith from some of the statutory requirements.  Regarding section 658, Aldarraji asserts that unless we interpret the statute to extend to members of the Islamic faith, it is unconstitutional.  *See* Me. Const. art. I, § 3; U.S. Const. amend. I. Alolwan counters that the exception of section 657 does not apply because the parties did not "meaningful[ly]" comply with any of the requisite statutory procedures.  He further contends that section 658 is not unconstitutional and that in any case, even if the exception were to be applied to the parties' religious marriage, it would not render the marriage valid because the parties did not comply with the statute's requirements.

[¶8]   We do not reach Aldarraji's statutory or constitutional arguments, however, because we conclude that Maine law does not apply when

6

determining the validity of a marriage that did not occur in Maine. When faced with a choice-of-law question, we generally use Maine's choice-of-law rules to determine which jurisdiction's substantive laws apply. *See State Farm Mut. Auto. Ins. Co. v. Koshy*, 2010 ME 44, ¶ 21, 995 A.2d 651. Application of these rules is an issue of law that we review de novo. *See Collins v. Trius, Inc.*, 663 A.2d 570, 572 (Me. 1995).

[¶9] In recent choice-of-law matters, we have looked to the Restatement (Second) of Conflict of Laws to determine which jurisdiction's substantive laws apply. *See, e.g., Flaherty v. Allstate Ins. Co.*, 2003 ME 72, ¶¶ 16-22, 822 A.2d 1159; *Schroeder v. Rynel, Ltd., Inc.*, 1998 ME 259, ¶¶ 8-13, 720 A.2d 1164. *See generally* Restatement (Second) of Conflict of L. (A.L.I. 1971), Westlaw (database updated Sep. 2025). As Aldarraji correctly notes, we have often favored the Second Restatement's approach, which we have adopted in fields of law such as torts, *see, e.g., Flaherty*, 2003 ME 72, ¶¶ 16-22, 822 A.2d 1159, contracts, *see, e.g., Schroeder*, 1998 ME 259, ¶¶ 8-13, 720 A.2d 1164, and evidence, *see State v. Lipham*, 2006 ME 137, ¶ 7 n.3, 910 A.2d 388 (considering whether to apply Maine or Alabama law regarding waiver of the spousal privilege).

[¶10]  The question of whether Maine law may be applied to determine the validity of a marriage that did not occur in Maine is one of first impression for us.  Generally, in the case of a marriage that occurred elsewhere, we will recognize the marriage as valid if entered into pursuant to the laws of the jurisdiction where it occurred, unless it is contrary to the basic public policies of this state.  *See Harding v. Alden*, 9 Me. 140, 146 (1832) ("The contract of marriage is of universal obligation; and by the law and practice of all civilized nations, a marriage valid by the law of the place, where it is entered into, is binding every where."); *Loughran v. Loughran*, 292 U.S. 216, 223 (1934) ("Marriages not polygamous or incestuous, or otherwise declared void by statute, will, if valid by the law of the state where entered into, be recognized as valid in every other jurisdiction." (footnote omitted)); *see also* 19-A M.R.S. § 650-B ("A marriage of a same-sex couple that is validly licensed and certified in another jurisdiction is recognized for all purposes under the laws of this State."); *id.* § 701 (listing types of marriages that are void in Maine, regardless of their legality in another jurisdiction).  Aldarraji argues that we should jettison this approach in favor of the Second Restatement's mode of analysis, which involves using the laws of the jurisdiction that "has the most significant relationship to the spouses and the marriage" to determine the validity of a

marriage.  *See* Restatement (Second) of Conflict of L. §§ 6, 283.[3]  She further contends that because she and Alolwan have continuously resided in Maine since before their religious ceremony, we should use Maine law to assess the legality of their marriage.[4]

[¶11]  We have never applied the Second Restatement's approach in the context of determining the validity of a marriage, and we decline to do so here. Instead, we adhere to our general rule that the validity of a marriage should be determined according to the laws of the jurisdiction in which the marriage ceremony occurred.  *See Harding*, 9 Me. at 146.

[¶12]  This is consistent with the view of a number of courts faced with this question.  *See* 55 C.J.S. *Marriage* § 8, Westlaw (database updated Mar. 2026) ("[T]he general rule is that the validity of a marriage is determined by the law

---

[3]  Section 6 provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law"; for jurisdictions lacking such a directive—such as Maine— it enumerates a list of factors relevant to determining which jurisdiction's substantive law should apply.  Restatement (Second) of Conflict of L. § 6.

[4]  In support of this contention, Aldarraji cites to cases from a handful of other jurisdictions that follow the Second Restatement, as well as an 1886 decision of this Court, *Gregory v. Gregory*, in which we declared that "[t]he state has the absolute right to determine or alter the civil status of all its inhabitants[, n]o matter where they may temporarily be," 78 Me. 187, 189, 3 A. 280, 281 (1886).  That statement, arising in the context of determining whether an Illinois divorce decree was binding on Maine residents, *see id.* at 189-90, 3 A. at 281-82, reflects policy concerns regarding divorce—among them preventing forum-shopping—that do not necessarily apply where two mutually assenting adults enter into a marriage contract.  *Compare* 19-A M.R.S. § 901(1) (2025) (requiring those seeking to divorce in Maine courts to establish residency in Maine), *and id.* § 907 (declaring divorces obtained by "residents of the State [who] go out of the State for the purpose of obtaining a divorce" void under certain circumstances), *with id.* § 651(1) (permitting non-residents to marry in Maine).

of the place where it was contracted, or celebrated." (footnote omitted)); 52 Am. Jur. 2d *Marriage* § 59, Westlaw (database updated Feb. 2026) ("[T]he general rule is that the validity of a marriage is determined by the law of the place where it is contracted.").[5]  The benefit of this rule is its simplicity.  One of the major drawbacks of the Second Restatement method is its complexity.  *See* Gregory E. Smith, *Choice of Law in the United States*, 38 Hastings L.J. 1041, 1046 (1987) ("The Second Restatement has considerable merit as a flexible mixture of the current thinking on choice of law. . . . Its fatal flaw, however, is its complexity.").  "Sound public policy dictates that there be a minimum of uncertainty as to whether or not a valid marriage exists."  *Pierce v. Sec'y of U.S. Dep't of Health, Educ. and Welfare*, 254 A.2d 46, 47 (Me. 1969).  Our decision today provides that clarity—when Maine courts are asked to determine the

---

[5] *See also, e.g.*, *Colbert v. Colbert*, 169 P.2d 633, 635 (Cal. 1946) ("Ordinarily, the law of the place of marriage controls the question of its validity."); *Fattibene v. Fattibene*, 441 A.2d 3, 5 (Conn. 1981) ("Since the parties married in Washington, D.C., we must look to the law of that jurisdiction [to determine the validity of their marriage]."); *Norman v. Ault*, 695 S.E.2d 633, 636 (Ga. 2010) ("Marriage being considered a civil contract, its validity will be judged by the law of the forum in which it was made . . . ." (quotation marks omitted)); *Laikola v. Engineered Concrete*, 277 N.W.2d 653, 655 (Minn. 1979) ("The validity of a marriage normally is determined by the law of the place where the marriage is contracted." (quotation marks omitted)); *In re Est. of Brown*, 846 S.E.2d 342, 350 n.10 (S.C. 2020) ("The validity of a marriage is usually determined by the jurisdiction where it is contracted."); *Franzen v. E. I. Du Pont De Nemours & Co.*, 146 F.2d 837, 839 (3d Cir. 1944) ("The validity of a marriage is to be determined by the law of the place where it is contracted.").

10

validity of a marriage, they will look to the laws of the jurisdiction where the marriage ceremony occurred.[6]

[¶13]  This rule is also consistent with the statutes governing the process of entering into marriage in Maine.  *See generally* 19-A M.R.S. §§ 650-660.  The language of these statutes suggests that they are meant to apply only to marriage ceremonies that occur in Maine.  *See id.* § 651(1) ("Once the intentions are filed and the license is issued, the parties are free to marry anywhere *within the State*." (emphasis added)); *id.* § 655(1) (providing that certain persons "may solemnize marriages *in this State*" (emphasis added)); *id.* § 656(1) ("A marriage license must have conspicuously printed on it the following words: 'The laws of Maine provide that only authorized persons may solemnize marriages *in this State.*'" (emphasis added)).  It follows that these statutes should not be applied to determine the validity of a marriage that does not occur in Maine.

[¶14]  We conclude that the proper question for the trial court to have considered was whether the parties were validly married according to the laws of the United Arab Emirates, where their marriage ceremony occurred.  The trial court recognized as much, inviting Aldarraji to demonstrate "that there

---

[6]  We emphasize that nothing in our decision precludes Maine couples from having a wedding outside of Maine and achieving a valid marriage by either complying with the requirements of the out-of-state jurisdiction or following Maine's statutory process before or after the wedding.

was a legal marriage in Dubai that the State of Maine should recognize." Aldarraji did not avail herself of this opportunity, arguing instead that her extraterritorial marriage complied with Maine's statutory marriage procedures. On appeal, Aldarraji continues to insist that we should assess the validity of her marriage by reference to Maine law. She has therefore waived any argument that she was lawfully married according to the laws of the United Arab Emirates.[7] *See State v. Beaulieu*, 2025 ME 4, ¶ 19 n.9, 331 A.3d 280.

## III. CONCLUSION

[¶15] The trial court supportably concluded that Aldarraji failed to demonstrate that the parties were "legally married in Maine, *or anywhere else.*" (Emphasis added.) In the absence of a valid marriage, there was no divorce to be had. *See Belliveau*, 2019 ME 122, ¶¶ 4-6, 213 A.3d 617. We therefore affirm the court's order dismissing Aldarraji's complaint for divorce.

The entry is:

Judgment affirmed.

---

[7] This argument is waived for the additional reason that M.R. Civ. P. 44A requires "[a] party who intends to raise an issue concerning the law of a foreign country [to] give notice in that party's pleadings or other reasonable written notice." Aldarraji provided no such notice.

Colin W.B. Chard, Esq. (orally), Robinson Kriger & McCallum, Portland, for appellant Tabarek T.H. Aldarraji

Mehron D. Buerger, Esq. (orally), Rioux, Donahue, Chmelecki & Peltier, LLC, Portland, for appellee Tareq Alolwan

Biddeford District Court docket number FM-2024-281
FOR CLERK REFERENCE ONLY