1998 ME 208

**Charmaine B. SHAW**

v.

**Stephen M. JENDZEJEC et al.**

Supreme Judicial Court of Maine.

Argued Jan. 5, 1998.

Decided Aug. 12, 1998.

Jared R. Green (orally), Kenneth C. Brown, Abramson, Reis, Brown & Dugan, Manchester, NH, D. Michael Noonan, Shaheen & Gordon, Dover, for plaintiffs.

Elizabeth A. Germani (orally), Ernest J. Babcock, Friedman, Babcock & Gaythwaite, Portland, for York Hospital.

Christopher D. Nyhan, Penny Littell, Preti, Flaherty, Beliveau & Pachios, L.L.C., Portland, for Jendzejec, York Family Practice and others.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

DANA, Justice.

[¶ 1] Charmaine B. Shaw, the personal representative of the estate of Thomas L. Shaw, IV, appeals from a summary judgment entered in the Superior Court (York County, *Calkins, J.*) in favor of the defendants, Stephen M. Jendzejec, York Family Practice, and York Hospital, on her wrongful death claim. Shaw asks us to overturn our decision in *Milton v. Cary Med. Ctr.*, 538 A.2d 252 (Me.1988), and hold that a viable fetus is a "person" whose heirs are entitled to maintain a cause of action pursuant to Maine's wrongful death statute, 18–A M.R.S.A. § 2–804 (1998). We affirm the judgment.

I.

[¶ 2] The tragic facts of this case are not in dispute. On February 10, 1994, Charmaine Shaw was admitted to York Hospital for the delivery of her child after a full term pregnancy. During the labor, the baby's head was delivered up to his mouth and ears, but his shoulder became stuck on Charmaine's pubic bone. Approximately twenty minutes after he became stuck, the baby was delivered, but despite resuscitative efforts, he never had a heart beat or respiration and was determined to be stillborn. Charmaine

and her husband, Thomas, filed a notice of claim pursuant to 24 M.R.S.A. § 2903 (1990 & Pamph.1997),[1] alleging that the child's death resulted from negligence on the part of the defendants and seeking damages pursuant to Maine's wrongful death statute,[2] as well as for their own pain and suffering and loss of consortium. After extensive discovery the defendants moved for a summary judgment on the wrongful death portion of the Shaws' claim, arguing that our decision in *Milton v. Cary Med. Ctr.*, 538 A.2d 252 (Me. 1988), precluded the Shaws' claim. The court granted the motion, and this appeal followed.[3]

1. 24 M.R.S.A. § 2903, part of the Maine Health Security Act, governs actions for claims of professional negligence against healthcare providers and practitioners and requires the filing of a written notice of claim and participation in a prelitigation screening and mediation process prior to commencing a lawsuit.

2. The entire text of Maine's wrongful death statute, 18–A M.R.S.A. § 2–804 (1998), is as follows:

§ 2–804. **Actions for wrongful death**

(a) Whenever the death of a person shall be caused by a wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then the person or the corporation that would have been liable if death had not ensued shall be liable for damages as provided in this section, notwithstanding the death of the person injured and although the death shall have been caused under such circumstances as shall amount to a felony.

(b) Every such action must be brought by and in the name of the personal representative of the deceased person, and the amount recovered in every such action, except as otherwise provided, is for the exclusive benefit of the surviving spouse if no minor children, and of the children if no surviving spouse, and one-half for the exclusive benefit of the surviving spouse and one-half for the exclusive benefit of the minor children to be divided equally among them if there are both surviving spouse and minor children, and to the deceased's heirs to be distributed as provided in section 2-106 if there is neither surviving spouse nor minor children. The jury may give such damages as it determines a fair and just compensation with reference to the pecuniary injuries resulting from the death to the persons for whose benefit the action is brought and in addition shall give such damages as will compensate the estate of the deceased person for reasonable expenses of medical, surgical and hospital care and treatment and for reasonable

[¶ 3] With this case, we must decide for the second time in ten years whether Maine law recognizes a cause of action for wrongful death brought by the parents of a stillborn fetus. In *Milton*, we answered this question in the negative by strictly construing Maine's wrongful death statute and held that recognition of such a cause of action would create an anomaly that would "do violence to the very fabric of the Probate Code." *Milton*, 538 A.2d at 255. Although a careful study of our decision in *Milton* reveals that the opinion contains several analytical flaws, we conclude that the force of *stare decisis* compels us to reaffirm its holding.

funeral expenses, and in addition may give damages not exceeding $150,000 for the loss of comfort, society and companionship of the deceased, including any damages for emotional distress arising from the same facts as those constituting the underlying claim, to the persons for whose benefit the action is brought, and in addition may give punitive damages not exceeding $75,000, provided that the action is commenced within 2 years after the decedent's death. If a claim under this section is settled without an action having been commenced, the amount paid in settlement must be distributed as provided in this subsection. No settlement on behalf of minor children is valid unless approved by the court, as provided in Title 14, section 1605.

(c) Whenever death ensues following a period of conscious suffering, as a result of personal injuries due to the wrongful act, neglect or default of any person, the person who caused the personal injuries resulting in such conscious suffering and death shall, in addition to the action at common law and damages recoverable therein, be liable in damages in a separate count in the same action for such death, brought, commenced and determined and subject to the same limitation as to the amount recoverable for such death and exclusively for the beneficiaries in the manner set forth in subsection (b), separately found, but in such cases there shall be only one recovery for the same injury.

(d) Any action under this section brought against a governmental entity under Title 14, sections 8101 to 8118, shall be limited as provided in those sections.

3. The summary judgment order did not dispose of the Shaws' claims for their own pain and suffering and loss of consortium. The court denied the parties' request to enter a final judgment on the wrongful death claim to allow an appeal on that issue. The parties agreed, however, to dismiss all claims other than the wrongful death claim without prejudice, thereby allowing this appeal.

## II.

[¶ 4] In *Milton,* our use of an insulated method of statutory interpretation that declined to consider the rationales offered by other jurisdictions on this important issue was out of character. *See Milton,* 538 A.2d at 254. Indeed, we offered no explanation for deviating from our routine practice of examining how other courts have treated analogous statutes as at least one factor when interpreting our own statutes. *See, e.g., Campbell v. Town of Machias,* 661 A.2d 1133, 1136 (Me.1995) (cases arising under the federal Freedom of Information Act considered useful in analyzing the scope of Maine's Freedom of Access Act); *Gordon v. Maine Cent. R.R.,* 657 A.2d 785, 786 (Me.1995) (appropriate to look to analogous statutes and case law for guidance when term is not defined in relevant statutory provisions or prior judicial decisions). *Accord Levesque v. Chan,* 569 A.2d 600, 601 (Me.1990); *Town of Orient v. Dwyer,* 490 A.2d 660, 662 (Me.1985) (relying on federal court interpretations of the federal rules when interpreting the parallel rules of Maine courts). "Similar statutes of other states comprise a type of extrinsic aid deserving of special attention in the process of interpretation." 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 52.01, at 197 (5th ed.1992).

[¶ 5] Next we engaged in the awkward exercise of trying to harmonize the provisions of the wrongful death statute with other provisions of the Probate Code. Although included with other probate laws in our statutes since 1944, an action for wrongful death is, and always has been, essentially a tort action. It is likely that the statute was placed with other laws governing probate procedure when Maine's laws were recodified in 1944 simply because the action is customarily brought by the personal representative of the deceased. There is simply no evidence that the Legislature's decision to place the statute within the probate provisions either in 1944 or when it adopted the Uniform Probate Code in 1981 was intended to change the law's meaning or interpretation in any way. *See* Dennis M. Doiron, *A Better Interpretation of the Wrongful Death Act,* 43 ME. L.REV. 449, 463–67 (1991).[4]

[¶ 6] Our determination that permitting a cause of action for the wrongful death of a viable fetus would grant the fetus rights that it does not have in the rest of the Probate Code, *see Milton,* 538 A.2d at 255, was also questionable. The wrongful death statute grants *no* rights to the deceased. The statute provides a cause of action only to the living relatives or heirs of the deceased. In this respect we confused the wrongful death cause of action with the survival cause of action, which is separately provided for in 18–A M.R.S.A. § 3–817.[5] The wrongful death cause of action, although dependent on a cause of action that the deceased would have possessed had death not ensued,[6] *see*

---

**4.** The Maine Probate Law Revision Commission, which in 1978 recommended to the Legislature the adoption of the model Uniform Probate Code with some modifications, explained that certain sections of the proposed Code, including the wrongful death provision, were included in the Code merely for the sake of convenience.

Some parts of the proposed Maine Probate Code that do not appear in the Uniform Probate Code are simply sections preserved from present Maine law which are not covered by, and are not inconsistent with, the uniform version, but are merely supplemental to its operation and, in some instances, have been modified to fit into the Uniform Probate Code system.

MAINE PROBATE LAW REVISION COMMISSION, REPORT TO THE LEGISLATURE AND SUMMARY OF THE COMMISSION'S STUDY AND RECOMMENDATIONS CONCERNING MAINE PROBATE LAW 8 (Sept.1978). The Commission made clear that no change in prior interpretations of the wrongful death statute were intended by its

inclusion in the revised Probate Code: "[I]n preserving substantially intact the present Maine Wrongful Death Act as § 2–804 of the proposed new Title 18–A the Commission did not have time to fully consider any possible changes that might be desirable in those provisions." *Id.* at 47.

**5.** 18–A M.R.S.A. § 3–817 (1998) provides in pertinent part:

(a) No personal action or cause of action shall be lost by the death of either party, but the same shall survive for and against the personal representative of the deceased....

**6.** There can be little doubt that the Shaws' son would have been entitled to bring a malpractice action for injuries received while in utero had he lived. Similarly, there would be no objection to the Shaws bringing a wrongful death action if the injuries caused his death after being born alive. *See* W. PAGE KEETON ET AL., PROSSER AND

18–A M.R.S.A. § 2–804(a), is a separate and distinct cause of action that statutorily is granted to the deceased's family members or heirs. Because of our confusion on this point, we concluded that allowing the action following a stillbirth would somehow grant some legal right to the fetus that it did not have otherwise, when such is not the case.

[¶ 7] Finally, our use of Maine's abortion statutes to support our conclusion that the word "person" in section 2–804(a) is defined as "one born alive" was curious, to say the least. *See Milton*, 538 A.2d at 255–56. Our statutes define the word "person" in numerous ways depending on the context in which the word is used.[7] The Probate Code itself defines "person" as "an individual, a corporation, an organization, or other legal entity." 18–A M.R.S.A. § 1–201(29) (1988). When the Legislature referred to a "human person" as "one born alive" in 22 M.R.S.A. § 1595 it did so explicitly *for purposes of the chapter governing abortions only*.[8] The circumstances presented in *Milton* did not implicate Maine's abortion law in any way, and our use of a statutory definition that was explicitly limited to the abortion context to support our holding in a wrongful death case was of limited value. *Cf. Seeley v. Dir. of Bureau of Labor Standards*, 505 A.2d 95, 96

(Me.1986) (attempt to import definition of "wages earned" from related statute unavailing).

## III.

[¶ 8] Nonetheless, in order to justifiably overturn the rule of law we adopted in *Milton*, our unease with the analysis undertaken in that case must outweigh the compelling policy of following judicial precedent. *Stare decisis* serves "the obvious need to promote consistency and uniformity of decisions." *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 935 (Me.1982); *see also Myrick v. James*, 444 A.2d 987, 997 (Me.1982) ("It is the historic policy of our courts to stand by precedent and not to disturb a settled point of law."). Pursuant to that doctrine,

> a deliberate or solemn decision of a court, after argument on a question of law fairly arising in the case, the disposition of which is necessary to the determination of the case, is an authority or binding precedent in the same court and in other courts of equal or lower rank, in subsequent cases where the very point is again in controversy.

*Myrick v. James*, 444 A.2d at 997–98. Although we recognize that the analytical un-

---

KEETON ON THE LAW OF TORTS § 55, at 368 ("The child, if he is born alive, is now permitted in every jurisdiction to maintain an action for the consequences of prenatal injuries, and if he dies of such injuries after birth an action will lie for his wrongful death.").

**7.** In fact there are approximately one hundred definitions of "person" scattered throughout our Revised Statutes. *See, e.g.*, 5 M.R.S.A. § 8002(8) (1989) (Administrative Procedure Act) (" 'Person' means any individual, partnership, corporation, governmental entity, association or public or private organization of any character. . . ."); 17–A M.R.S.A. § 2(20) (1983) (Criminal Code) (" 'Person' means a human being or an organization."); 22 M.R.S.A. § 2901(6) (1992) (Anatomical Gift Act) (" 'Person' means an individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association or any other legal entity.").

**8.** Maine's abortion law provides:

"Live born" and "live birth," *as used in this chapter*, shall mean a product of conception after complete expulsion or extraction from its mother[,] irrespective of the duration of the

pregnancy, which breathes or shows any other evidence of life such as beating of the heart, pulsation of the umbilical cord or definite movement of voluntary muscles, whether or not the umbilical cord has been cut or the placenta is attached. Each product of such a birth is considered live born and fully recognized as a human person under Maine law.

22 M.R.S.A. § 1595 (1992) (emphasis added). Section 1595 was enacted in 1973 simultaneously with section 1594, which provides:

Whenever an abortion procedure results in a live birth, failure to take all reasonable steps, in keeping with good medical practice, to preserve the life and health of the live born person shall subject the responsible party or parties to Maine law governing homicide, manslaughter and civil liability for wrongful death and medical malpractice.

22 M.R.S.A. § 1594 (1992). Far from attempting to provide an expansive definition of "person," these statutes, read together, clearly aim to address the very limited circumstance of a health care provider's responsibility in the event of complications during an abortion procedure. Thus, the abortion statute's definition of "person" should be limited to the abortion context only.

derpinnings of our *Milton* decision are subject to some criticism and understand that some may disagree with our conclusion in *Milton,* that decision was certainly the product of deliberate and solemn analysis.

[¶ 9] In *Myrick* we articulated a set of guiding principles pursuant to which a prior decision may and should be overruled, stating that such action is appropriate when: (1) the court is convinced that the rule of the prior decision operates harshly, unjustly and erratically to produce, in its case-by-case application, results that are not consonant with prevailing, well-established conceptions of fundamental fairness and rationally-based justice, (2) that conviction is buttressed by more than the commitment of the individual justices to their mere personal policy preferences, that is, by the substantial erosion of the concepts and authorities upon which the former rule is founded and that erosion is exemplified by disapproval of those conceptions and authorities in the better-considered recent cases and in authoritative scholarly writings, (3) the former rule is the creation of the court itself in the legitimate performance of its function in filling the interstices of statutory language by interpretation and construction of vague, indefinite and generic statutory terms, (4) the Legislature has not, subsequent to the court's articulation of the former rule, established by its own definitive and legitimate pronouncement either specific acceptance, rejection or revision of the former rule as articulated by the court, and (5) the court can avoid the most severe impact of an overruling decision upon reliance interests that may have come into being during the existence of the former rule by creatively shaping the temporal effect of the new rule articulated by the holding of the overruling case.

*Id.* at 1000 (quotation omitted).

[¶ 10] The live-birth rule is the product of our legitimate interpretation and construction of imprecise statutory language. Further, despite the Legislature's attempt to address our holding in *Milton, see* L.D. 551 (114th Legis.1989), that body has neither accepted, rejected, nor revised that judicially created rule. Therefore, neither the third nor the fourth principle articulated in *Myrick* presents a substantial barrier to our overturning of *Milton.*

[¶ 11] The remaining *Myrick* factors, however, caution us against overturning the rule we adopted in *Milton.* We are not firmly convinced that allowing a cause of action for the wrongful death of a viable fetus would necessarily alleviate any harshness that results from the live-birth rule. The circumstances in each of the cases presenting this issue undoubtedly are devastating for the families involved, and allowing the cause of action for the wrongful death of a viable fetus would certainly permit a greater number of persons to seek recovery for the loss of an expected child. We conclude, however, that drawing these types of lines, which inevitably will lead to harsh results for *some* parties, is a public policy task uniquely suited to the legislative, rather than the judicial process, especially in the present circumstances, where we have previously issued a definitive ruling.

[¶ 12] In addition, although our holding in *Milton* has been criticized in two law review articles,[9] there has been virtually no change in the alignment of other courts with respect to their positions on the issue,[10] nor are we

---

9. *See* Dennis Doiron, *A Better Interpretation of the Wrongful Death Act,* 43 Me.L.Rev. 449 (1991); Stan Piecuch, Note, *Milton v. Cary Medical Center: A Viable Fetus is Not a Person Under Maine's Wrongful Death Statute,* 41 Me.L.Rev. 429 (1989).

10. Since our decision in *Milton,* the Supreme Court of Montana, overruling precedent, found that a fetus is a person under Montana's wrongful death statute. *Strzelczyk v. Jett,* 264 Mont. 153, 870 P.2d 730 (1994). In *Milton,* we mistakenly included North Carolina among the states that did not allow a wrongful death action on behalf of a viable fetus, citing *Gay v. Thompson,* 266 N.C. 394, 146 S.E.2d 425 (1966). *See Milton,* 538 A.2d at 254 n. 5. At the time of our decision, the North Carolina Supreme Court had already interpreted a new version of their wrongful death statute to allow this cause of action. *DiDonato v. Wortman,* 320 N.C. 423, 358 S.E.2d 489 (1987). Most recently, a federal court has construed the Hawaii wrongful death statute to allow a cause of action with respect to the death of a viable fetus, although the state courts have not addressed this issue. *Wade v. United States,* 745 F.Supp. 1573 (D.Haw.1990).

aware of any significant shift in societal views during the past ten years that compels us to abandon our prior holding.

[¶ 13] In summary, we conclude that the strong policies underlying the doctrine of *stare decisis* outweigh any uncertainty we have regarding our holding in *Milton.* We therefore are of the opinion that it is appropriate to leave the important public policy decision of whether Maine should adopt a cause of action for the wrongful death of a viable fetus to those most appropriately situated to make that determination: the popularly elected members of the Legislature.

The entry is:

Judgment affirmed.

