2003 ME 72

**Matthew FLAHERTY et al.**

v.

**ALLSTATE INSURANCE COMPANY**

Supreme Judicial Court of Maine.

Argued: Dec. 10, 2002.
Decided: May 13, 2003.

Richard P. Olson (orally), Patrick J. Mellor, Perkins Olson, P.A., Portland, for plaintiffs.

Jonathan W. Brogan, Anne M. Carney (orally), Norman, Hanson & DeTroy, LLC, Portland, for defendant.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Matthew Flaherty and Susan Carlisle appeal from a judgment entered in the Superior Court (York County, Brennan, J.) dismissing their complaint against Allstate Insurance Company. Allstate urges us to dismiss the appeal, contending that the notice of appeal was not filed in a timely manner and that the Superior Court erred in granting a motion to extend the time within which to file the appeal. Allstate also defends the merits of the dismissal. We conclude that the appeal is timely, and we affirm the Superior Court's dismissal of Count II of the complaint. Matthew contends that the Superior Court's determination that Connecticut law should be applied was made without fully taking into account the significant contacts that Maine has to the parties involved in this case, and that there are substantial policy considerations favoring the application of Maine law. We agree and we vacate the dismissal of Count I, and remand to the Superior Court for further proceedings.

I.

[¶ 2] On January 1, 1999, Charles Flaherty, his pregnant wife, Josephine, and her daughter, Carlee, all Maine residents, were traveling on Route 95 from Maine towards Charles's duty station at Fort Bragg, North Carolina. In Bridgeport, Connecticut, a vehicle driven by Silvestre Bonilla struck Charles's vehicle. At the time of the accident, Bonilla was driving in the wrong direction on Route 95, his blood-alcohol level was 0.23, he was under the influence of cocaine, he was unlicensed, he was driving in an unregistered vehicle, and he had no insurance coverage. Josephine and Carlee were killed instantly, and Charles died later that same evening at the hospital.

[¶ 3] Matthew Flaherty, Charles's father, was appointed as the personal representative of Charles's estate, which was probated in Maine. Charles had uninsured motorist coverage with USAA, and, in September of 1999, USAA sent a payment to Matthew, as personal representative, for the estate's share of the policy proceeds. At the time of his son's death, Matthew had uninsured motorist coverage with Allstate Insurance Company. Susan Carlisle, Charles's mother, also had uninsured motorist coverage through a policy issued by Allstate.

[¶ 4] Matthew is a resident of York, Maine. Susan also resided in Maine, al-

though since her son's death, she lives part of the time in Arizona. On December 28, 2000, Matthew and Susan filed a complaint against Allstate in Superior Court. In Count I of the complaint, Matthew, as personal representative of Charles's estate, seeks recovery under the insurance contract between himself and Allstate, pursuant to *Jack v. Tracy*, 1999 ME 13, 722 A.2d 869. In Count II of the complaint, Matthew and Susan sought individual recovery based on their insurance contracts with Allstate.

[¶ 5] Allstate moved to dismiss both counts. Allstate argued for the dismissal of Count I because Connecticut's wrongful death statute applies, and, unlike Maine's wrongful death statute, Connecticut's statute does not create a cause of action for the heirs of the deceased that could be covered by the heirs' uninsured motorist coverage. Allstate argued that Count II should be dismissed because neither Matthew nor Susan qualify as either a direct or an indirect victim, and the complaint states no claim on which they could recover under their uninsured motorist coverage. In his opposition to the motion to dismiss Count I, Matthew contended, and continues to argue, that the court should apply Maine's wrongful death statute, and not Connecticut's statute. As to Count II, Matthew and Susan acknowledge that the law is as stated by Allstate, but they contend that there is a good faith exception to the law that applies to allow their recovery on Count II.

[¶ 6] The Superior Court concluded that the wrongful death statute of Connecticut, and not Maine applies, and dismissed Count I of the complaint. The court also dismissed Count II for failure to state a claim because the complaint did not allege any facts that would make either Matthew or Susan a direct or indirect victim.

[¶ 7] On March 11, 2002, thirty days after the trial court's order, Matthew and Susan filed a notice of appeal. On March 26, 2002, they filed a motion for an extension of time in which to file the appeal. The court granted the motion to extend, pursuant to M.R.App. P. 2(b)(5), over Allstate's objection. Allstate filed a motion to dismiss the appeal.

II.

[¶ 8] Allstate contends that we are precluded from entertaining plaintiffs' appeal because the plaintiffs failed to file a timely notice of appeal and did not show excusable neglect for their failure. A trial court's determination of excusable neglect is reviewed under an abuse of discretion standard. *Gregory v. City of Calais*, 2001 ME 82, ¶ 7, 771 A.2d 383, 386. Although "the standard for determining an excusable neglect defense is a strict one and can be met only when there are extraordinary circumstances that work an injustice," nevertheless, the trial court "has some discretionary range within which to grant or deny a motion for an enlargement of time." *Id.* ¶¶ 7, 9. We give a trial court's determination of excusable neglect "considerable deference because of its superior position to evaluate the credibility and good faith of the parties before it." *Id.* ¶ 9.

[¶ 9] Rule 2(b)(3) of the Maine Rules of Appellate Procedure, setting the time within which a party in a civil case must file a notice of appeal after entry of a judgment or order, became effective January 1, 2002, and shortened the appeal period from thirty days under the previous rule, to twenty-one days.[1] M.R.App. P. 2(b)(3). Rule 2(b)(5) of the Maine Rules of Appellate Procedure allows the court to extend the time to file a notice of appeal

1. M.R.App. R. 2(b)(3) replaced M.R. Civ. P. 73(a).

by up to twenty-one additional days if the appealing party makes a showing of excusable neglect.[2] M.R.App. P. 2(b)(5).

[¶ 10] We have upheld findings of excusable neglect when the circumstances leading to the late filing are exceptional. *See, e.g., Gregory*, 2001 ME 82, ¶¶ 4, 10–11, 771 A.2d at 385, 387 (upholding trial court's finding of excusable neglect because a previously reliable paralegal responsible for calendaring events had become ill and unable to effectively perform her duties); *Solomon's Rock Trust v. Davis*, 675 A.2d 506, 509 (Me.1996) (upholding trial court's finding of excusable neglect because of spouse's death and need to find replacement counsel). This suit was commenced by Matthew and Susan well before the recent changes in the rules as to the time for taking an appeal, at a time when prior Civil Rule 73(a), which had been in place for many years, allowed thirty days within which to file a notice of appeal. They filed this appeal on the thirtieth day following the dismissal, which would have been timely under the prior Civil Rule 73(a). The Superior Court's judgment of dismissal in this case was entered in early February of 2002, when the new appellate rule had been in effect for only a month, and the calendar system in the plaintiffs' attorney's office had not yet been changed to take the newly shortened appeal period into account. Matthew and Susan moved promptly for an extension of time within which to file the appeal, and the trial court did not act beyond its discretion when it granted the extension based on excusable neglect.[3] *See Gregory*, 2001 ME 82, ¶ 9, 771 A.2d at 386.

### III.

■ [¶ 11] Matthew contends that the dismissal of Count I was improper because the trial court's determination that Connecticut law should be applied was made without properly considering the significant contacts and relationships that Maine has to the parties involved in this case, and that, because of those contacts and relationships and substantial policy considerations, Maine's wrongful death statute, and not Connecticut's, should be applied to the claim in Count I.

■ [¶ 12] The determination of whether or not a complaint is sufficient to state a claim upon which relief may be granted is a question of law, which we review *de novo*. *Bowen v. Eastman*, 645 A.2d 5, 6–7 (Me.1994). When reviewing a trial court's dismissal of a complaint, we take the facts alleged in the complaint as if

2. Rule 2(b)(5) provides as follows:
   (5) *Extension of Time*. Except when prohibited by statute, upon a showing of excusable neglect, the court may, before or after the time has expired, with or without motion and notice, extend the time for filing the notice of appeal otherwise allowed for a period not to exceed 21 days from the expiration of the original time prescribed by this subdivision.
   M.R.App. P. 2(b)(5).

3. In determining what circumstances qualify as excusable neglect we have previously held that an attorney's "mistaken belief as to the law does not rise to the level of excusable neglect." *Young v. Sturdy Furniture Co.*, 441 A.2d 320, 321 (Me.1982). In *Young*, the at-

torney for Sturdy Furniture Company mistakenly believed that the statutory ten-day period that counsel had to file a notice of appeal began to run from the attorney's receipt of the judgment. *Id*. On realizing the error, the attorney filed for an enlargement of time, which the Superior Court granted. *Id*. We held that the Superior Court abused its discretion and, therefore, dismissed the appeal as untimely. *Id*. at 322. The mistake of law was based on the attorney's misinterpretation of a statute. In this case the attorney for the plaintiffs was relying on a long-standing procedural rule governing the time for filing appeals, a rule that had been very recently changed.

they were true, and construe the complaint in the light most favorable to the plaintiff to determine whether it alleges the elements of any cause of action that would entitle the plaintiff to relief under any legal theory. *Danforth v. Gottardi*, 667 A.2d 847, 848 (Me.1995). The complaint "should not be dismissed unless it is beyond doubt that no relief can be granted under any facts that might be proved to support the plaintiff's claim." *Bowen*, 645 A.2d at 6.

[¶ 13] Maine law requires uninsured motorist coverage to be included in all liability insurance policies in order to protect "persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, *including death*, resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle." 24-A M.R.S.A. § 2902(1) (2000) (emphasis added). We have previously concluded that the legislative intent of the statute "is to benefit all insured motorists by throwing the burden of compensating for injuries which would otherwise go without redress from the individual victim to the insurance industry for a premium." *Wescott v. Allstate Ins.*, 397 A.2d 156, 166 (Me.1979). In order to collect under an insured's own insurance policy for uninsured coverage, the insured must still prove, in tort, an entitlement to damages from the uninsured motorist. *Id.* at 164.

[¶ 14] In Maine, a cause of action for wrongful death may be brought by the personal representative of a decedent's estate to benefit the heirs of the deceased. 18-A M.R.S.A. § 2-804 (1998 & Supp. 2002); *see also Shaw v. Jendzejec*, 1998 ME 208, ¶ 6, 717 A.2d 367, 369 ("The wrongful death statute grants *no* rights to the deceased. The statute provides a cause of action only to the living relatives or heirs of the deceased.") (emphasis added). Pursuant to Maine's wrongful death statute, under a policy such as that issued by Allstate, an insured may recover proceeds from the insured's *own* uninsured motorist coverage if the insured is an heir of a deceased whose death results from the actions of an uninsured motorist. *See Jack*, 1999 ME 13, ¶¶ 9-12, 722 A.2d at 871-72 (insured person legally entitled to recover from the operator of an uninsured auto may recover from own underinsured motorist coverage even if person sustaining death or bodily injury is not an insured under policy).

[¶ 15] In contrast to Maine, Connecticut's wrongful death statute provides for a cause of action that survives death, but that cause of action belongs only to the decedent. *See* CONN. GEN. STAT. ANN. §§ 52-555, 52-599 (West 2002); *Sanderson v. Steve Snyder Enters., Inc.*, 196 Conn. 134, 491 A.2d 389, 397 (1985). Because Connecticut's wrongful death statute creates a cause of action only for the decedent, and not for the heirs, there is nothing to suggest that Connecticut would recognize an insured heir's right to recover under his or her own uninsured policy.

[¶ 16] In *Beaulieu v. Beaulieu*, 265 A.2d 610, 616-17 (Me.1970), we abandoned the rule of *lex loci delicti*, which dictated that the law of the place where the injury occurred controlled, and instead adopted the "most significant contacts and relationships" approach to determine which state law would be applied in a case such as this. The most significant contacts and relationship approach, adopted by the American Law Institute in the RESTATEMENT (SECOND) CONFLICT OF LAWS §§ 145, 146 (1971), continues to be used in determining which state's or country's law should be applied. *Collins v. Trius, Inc.* 663 A.2d 570, 572 (Me.1995). Section 146

of the RESTATEMENT provides that "[in] an action for a personal injury the local law of the state where the injury occurred determines the rights and liabilities of the parties, *unless,* with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and the parties ...." *Id.* (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 146 (1971)). Section 145 of the RESTATEMENT enumerates the factors and contacts that should be considered in making this determination.[4]

■■■ *Id.* at 572 n. 5. The contacts to be considered are as follows:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Id.* at 572 n. 5 (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 (1971)). The "most significant contacts and relationships" approach is applied not only in tort actions, but in contract disputes as well.

*See Baybutt Constr. Corp. v. Commercial Union Ins. Co.,* 455 A.2d 914, 918 (Me. 1983) ("[T]he rights and duties of the parties with respect to an issue in contract are to be determined at the forum level by the local law of the state which, with respect to that particular issue, has the most significant relationship to the transaction and the parties."), *overruled on other grounds by Peerless Ins. Co. v. Brennon,* 564 A.2d 383, 383 (Me.1989).

[¶ 17] The trial court dismissed Count I of the complaint because, "[u]nder Maine's conflict of laws rule, the substantive law of Connecticut governs" and neither Connecticut's wrongful death statute nor its common law recognize a claim by an insured heir under the heir's own uninsured motorist coverage in a case such as this. Matthew contends that when the following significant contacts and relationships that Maine has to the transaction and the parties are properly analyzed, Maine law should be applied: Matthew, the insured, is a Maine resident, as was Charles and Charles's entire family (all relevant to factor c); Matthew purchased an insurance

---

4. Section 145 of the RESTATEMENT provides that the "general principle" is as follows:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Section 6 provides in pertinent part:

(2) [T]he factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Collins,* 663 A.2d at 572 n. 5 (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 (1971)).

policy with Allstate in a Maine insurance office and the insurance contract was signed in Maine; Charles's estate is being probated in Maine; and the beneficiaries are also Maine residents (all relevant to factor d). Moreover, Matthew contends, Maine has a public policy of protecting accident victims that weighs in Maine's favor in the conflicts analysis.

[¶ 18] Allstate contends that Connecticut's contacts are more significant because the accident occurred there (factor a), as well as the conduct causing the injury (factor b), the domicile of the tortfeasor is Connecticut (factor c), and the relationship of the parties must be centered in Connecticut because the accident occurred there (factor d).[5] In addition, Allstate argues that Maine does not have any overriding public policy interest in the wrongful death action.

[¶ 19] Although there are circumstances favoring the application of both Maine and Connecticut law, when "applying the 'most significant contacts and relationship' test, it is necessary to isolate the issue, to identify the policies embraced in the laws in conflict, and finally to examine the contacts with the respective jurisdictions to determine which jurisdiction has a superior interest in having its policy or law applied." *Collins*, 663 A.2d at 573. Furthermore, section 145 of the RESTATEMENT provides that in determining which state has the most significant contacts and relationship, the principles in section 6 of the RESTATEMENT should be considered. *Id.* at 572 n. 5. Section 6 lists several factors to be considered, including "the

relevant policies of the forum," "the relevant policies of other interested states," and "the protection of justified expectations." *Id.* (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 (1971)).

[¶ 20] In *Wescott*, we recognized that "by enacting the uninsured vehicle coverage statute, the Legislature has indicated a strong public policy in favor of the just compensation of accident victims." 397 A.2d at 167. We concluded that the Legislature intended to protect insured motorists and placed the burden of compensating victims of uninsured motorists on the insurance industry for a premium. *Id.* at 166. Maine's wrongful death statute creates a cause of action for the heirs of the deceased. *See* 18–A M.R.S.A. § 2–804; *Jendzejec*, 1998 ME 208, ¶ 6, 717 A.2d at 369. Thus, in *Jack v. Tracy*, it was determined that when an insured heir could show that he would be able to collect against the tortfeasor, then the insured heir could collect benefits under his own uninsured motorist coverage. 1999 ME 13, ¶¶ 9–12, 722 A.2d at 871–72. Although Connecticut also requires uninsured motorist coverage, CONN. GEN. STAT. ANN. § 38a–336 (West 2002), Connecticut's statute does not authorize the kind of recovery allowed under Maine's uninsured motorist statute and recognized in *Jack v. Tracy*. Connecticut's wrongful death statute does not benefit the heirs, but rather belongs to the decedent as a continuation of a suit that the deceased would have been able to bring if death had not occurred. *See Sanderson*, 491 A.2d at 397.

[¶ 21] With the exception of the tortfeasor, all of the parties involved in this case

---

5. Citing M.R. Civ. P. 56(e), Allstate argues that the statements made in the affidavit of Richard Olson that set out additional Maine contacts should not be considered because the statements in the affidavit were made "upon information and belief" instead of personal knowledge. Although Matthew does not re-

spond to this argument made by Allstate, an affidavit stated to have been made upon information and belief may still be sufficient under the rules, if the affidavit as a whole shows that the statements were made with personal knowledge. *Wescott*, 397 A.2d at 164.

are Maine residents. Matthew, the insured, entered into an insurance contract with Allstate in Maine that included the uninsured motorist coverage required by law. Given Maine's strong public policy favoring compensating accident victims injured by uninsured motorists, and Maine's wrongful death statute that is intended to compensate the heirs of the deceased, the policy considerations weigh in favor of applying Maine law. Although the accident occurred in Connecticut, none of the parties to this suit reside in Connecticut, nor was the Allstate policy issued in Connecticut. Accordingly, Matthew has demonstrated that Maine has the most significant contacts and relationships and that Maine law should be applied. *See, e.g., Collins,* 663 A.2d at 573 (holding that Canadian damages law should apply because Canada has the most significant interest as the passengers and driver were Canadian residents and Maine's only real contact with the suit is that the accident occurred within its territory); *Miller v. White,* 167 Vt. 45, 702 A.2d 392, 395–97 (1997) (holding that Vermont as domicile of the plaintiff has the stronger interest in compensating accident victims because the personal and economical repercussions of the accident will occur in Vermont, not in Quebec where the accident occurred).

■ [¶ 22] Because in the circumstances of this case Maine has the more significant contacts and relationships, the trial court erred in dismissing Count I for failure to state a claim. The complaint alleges facts sufficient to show that Matthew was an insured heir with a claim against an uninsured tortfeasor, and sufficiently states a claim recognized under Maine law. *See Jack v. Tracy,* 1999 ME 13, ¶¶ 9–12, 722 A.2d at 871–72.

### IV.

■ [¶ 23] The trial court also dismissed Count II of the complaint, entitled "Individual Recoveries." In order to recover under an insured's uninsured motorist coverage, the insured must prove a legal entitlement to recover from the tortfeasor. *Wescott,* 397 A.2d at 164. In Count II, Matthew and Susan are suing in their individual capacities, so they must qualify as either direct or indirect victims of the tortfeasor's negligence. *Michaud v. Great N. Nekoosa Corp.,* 1998 ME 213, ¶ 17, 715 A.2d 955, 959. A plaintiff qualifies as a direct victim if he or she was the direct object of the tortfeasor's negligent conduct. *Id.* ¶ 16. A plaintiff qualifies as an indirect victim if the plaintiff witnesses the tortfeasor's negligent conduct against a direct victim who is closely related to the plaintiff and the plaintiff suffers psychological harm as a result. *Id.*

[¶ 24] Matthew and Susan do not allege in their complaint that they were directly injured by the tortfeasor nor do they allege that they witnessed their son's accident. They acknowledge that they do not qualify as direct or indirect victims. They argue for a good faith exception to the law, but do not cite to any authority that would justify such an exception. Accordingly, the trial court properly dismissed Count II of the complaint because it fails to state any claim that would entitle either Matthew or Susan to relief. *See Napieralski v. Unity Church of Greater Portland,* 2002 ME 108, ¶ 4, 802 A.2d 391, 392.

The entry is:

Judgment affirmed as to Count II. Judgment vacated as to Count I. Remanded to the Superior Court for further proceedings consistent with this opinion.