# United States Court of Appeals
## For the First Circuit

No. 23-1532

DANA CHENG; EPOCH GROUP INC., d/b/a Epoch Media Group,

Plaintiffs, Appellees,

v.

DAN NEUMANN; MAINE PEOPLE'S ALLIANCE, d/b/a Beacon,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Montecalvo, Lynch, and Rikelman,
Circuit Judges.

John-Mark Turner, with whom Christopher Cole, Cassandra O. Rodgers, and Sheehan, Phinney, Bass & Green, P.A. were on brief, for appellants.

Christopher J. Bakes, with whom Kip Joseph Adams, Bryan Paul Sugar, Lann G. McIntyre, and Lewis Brisbois Bisgaard & Smith LLP were on brief, for appellees.

June 25, 2024

RIKELMAN, Circuit Judge. In 2021, a Maine news outlet, Beacon, ran an article about New York resident and political commentator Dana Cheng that characterized Cheng as "far-right" and a "conspiracy theorist." Cheng sued the article's author, Dan Neumann, and Beacon for defamation in federal court in Maine. Neumann and Beacon then sought dismissal of the case under both federal law and a New York anti-SLAPP[1] law that applies to meritless defamation lawsuits. Faced with dueling arguments by the parties about whether Maine or New York law applied to Cheng's defamation claim, the district court conducted a choice-of-law analysis, decided that New York law applied, and granted the motion to dismiss under New York's anti-SLAPP statute. On Cheng's appeal, we agreed with the district court's ruling but for a different reason: We decided that Cheng's lawsuit had to be dismissed under binding First Amendment principles protecting free speech by the press.

Back at the district court, Neumann requested attorneys' fees under the fee-shifting provision of New York's anti-SLAPP law. Faced with yet another choice-of-law dispute, the district court denied Neumann's request after determining that Maine, not New York, law applied to the specific issue of attorneys' fees. Now Neumann appeals, arguing that the district court erred in its

---

[1] SLAPP stands for "strategic lawsuit against public participation."

choice-of-law analysis. Although we note the district court's careful analysis below, we certify to the Supreme Judicial Court of Maine (the "Law Court") the question of which state's law applies because there is no clear controlling precedent on point and the choice-of-law analysis is determinative of the attorneys' fees issue.

## I. BACKGROUND

We draw the relevant facts from our prior decision in Cheng v. Neumann ("Cheng I"), 51 F.4th 438 (1st Cir. 2022), which describes the parties' dispute about the Beacon article in more detail.

Dana Cheng is a New York resident and the vice president and co-founder of The Epoch Times, a newspaper published by the New York-based Epoch Group. In June 2021, Cheng spoke at an event co-sponsored by the Maine Republican Party in Windham, Maine. A few weeks later, Beacon ran an article about the event titled "Maine GOP hosts speaker present at Jan. 6 Capitol assault." The article described Cheng's own statements about her presence during the attack on the U.S. Capitol on January 6th, 2021, and referred to Cheng as "far-right," "right-wing," and a "conspiracy theorist."

Cheng and the Epoch Group (together, "Cheng") sued Neumann and the Maine People's Alliance (together, "Neumann"), which publishes Beacon, for defamation in federal district court

in Maine under diversity jurisdiction.  Neumann moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and, separately, under a provision of New York's anti-SLAPP statute, N.Y. C.P.L.R. § 3211(g).

New York is among the many states that have passed anti-SLAPP laws, which generally provide extra breathing room for the press and others speaking out on issues of public concern by deterring baseless lawsuits.  See Libel and Privacy, Rep.'s Comm. for Freedom of the Press, https://perma.cc/BE5M-2UA5 (explaining that "[j]ournalists and news organizations often use anti-SLAPP laws to defend themselves against expensive, baseless lawsuits brought by the subject of an investigative story").  More specifically, such laws "provide . . . defendants [such as reporters and news outlets] with procedural and substantive defenses meant to prevent meritless suits from imposing significant litigation costs and chilling protected speech." Godin v. Schencks, 629 F.3d 79, 81 (1st Cir. 2010).  New York's anti-SLAPP statute consists of three separate, interlocking provisions:

- N.Y. Civ. Rights Law § 76-a, which broadly defines "an action involving public petition and participation" to cover claims based on news articles about public figures and provides that a plaintiff like Cheng can succeed in such an action only if she establishes by "clear and convincing evidence" that the allegedly defamatory statement "was made with knowledge of its falsity or with reckless disregard of whether it was false";

- 4 -

- N.Y. C.P.L.R. § 3211(g), which provides a procedural mechanism for speakers like Neumann to move to dismiss an action involving public participation and instructs that such a motion "shall be granted unless the party [bringing the claim, here Cheng,] demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification, or reversal of existing law"; and

- N.Y. Civ. Rights Law § 70-a ("section 70-a"), which provides that a defendant in an action involving public participation, such as a reporter or a news outlet like Neumann, is entitled to attorneys' fees upon a demonstration, including a finding under N.Y. C.P.L.R. § 3211(g), that the action was commenced without any substantial basis in law or argument for extending the law.

Given that Cheng resides in New York and Neumann is based in Maine, the parties disputed in the district court whether Maine or New York law applied. After conducting a choice-of-law analysis and determining that New York law governed Cheng's defamation claim because she is a New York resident and would have experienced any harm from the speech in New York, the district court granted Neumann's motion to dismiss under N.Y. C.P.L.R. § 3211(g). See Cheng v. Neumann, No. 21-cv-00181, 2022 WL 326785, at *7 (D. Me. Feb. 3, 2022) (explaining that "the New York anti-SLAPP law applies here rather than the standard Rule 12(b)(6) framework"); id. at *9 (dismissing the case because "[p]laintiffs have failed to demonstrate that [d]efendants' [a]rticle is not presumptively protected from suit under New York Civil Rights Law § 76-a or that

- 5 -

their libel claim 'has a substantial basis in law['] . . . under New York Civil Practice Law and Rule 3211(g)"). Cheng appealed.

On appeal, we affirmed but took a different route. Instead of evaluating the district court's choice-of-law analysis and affirming under New York law, we "bypass[ed] the parties' choice-of-law disputes" and instead "look[ed] to dispositive First Amendment principles." Cheng I, 51 F.4th at 443. Because the Beacon article, on its face, contained only statements that were either factually true or expressions of opinion and therefore unprovable as false, we held that the complaint did not state a plausible defamation claim under any state's law given binding First Amendment precedent. Id. at 445-47.

Back in district court, as the winning party on the defamation claim, Neumann requested attorneys' fees and costs under Federal Rule of Civil Procedure 54(d)(2), which allows a prevailing party to move for attorneys' fees after the entry of judgment. The rule also requires the party seeking fees, here Neumann, to "specify . . . the statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2)(B)(ii). Neumann identified section 70-a, the fee-shifting provision of New York's anti-SLAPP law, as the source of authority for his request.

The district court denied Neumann's attorneys' fees motion. It concluded that the question of which state's law

- 6 -

applied to the attorneys' fees issue was a separate and distinct question from which state's law applied to Cheng's defamation claim itself. Relying on choice-of-law principles from the Second Restatement of Conflict of Laws, the court determined that Maine law governed Neumann's request for fees because "New York's interest in a Maine publisher's access to a fee-shifting remedy in a Maine court is of less significance than Maine's interest in affording that remedy." This timely appeal followed.

## II. DISCUSSION

Neumann argues that the district court erred in its conflict of laws analysis on the attorneys' fees issue. He maintains that proper evaluation of the Restatement factors results in the application of New York law, under which he is entitled to fees.[2] In response, Cheng contends that our decision in Cheng I eliminated state law from this case altogether by resolving the merits on First Amendment grounds. In her view, under the law of the case doctrine, our prior decision means that only federal law applies in this case, and Neumann has no right to fees under federal law.

---

[2] We note that section 70-a does not condition an award of attorneys' fees solely upon prevailing under the procedural provisions of New York's anti-SLAPP statute, as opposed to under federal law. Instead, it entitles a defendant to attorneys' fees upon "a demonstration, including [a dismissal under New York's anti-SLAPP law], that the action . . . was commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a (emphasis added).

- 7 -

## A. Law of the Case Doctrine

We begin with -- and reject -- Cheng's argument that the law of the case doctrine eliminates state law from this case altogether.

Under our precedent, "[t]he law of the case doctrine has two branches" directly related to appellate decisions. United States v. Matthews, 643 F.3d 9, 13 (1st Cir. 2011). The first branch, known as the "mandate rule," prevents a trial court from reconsidering matters that were "explicitly or implicitly decided by an earlier appellate decision in the same case." Id. (quoting United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004)). The second branch "binds a 'successor appellate panel in a second appeal in the same case' to honor fully the original decision." Id. (quoting Moran, 393 F.3d at 7). "Whether the doctrine applies in a specific instance is a question of law, engendering de novo review." Id.

Cheng argues that Neumann's request for fees under New York law violates this doctrine by ignoring the "legal effect" of our prior panel decision. She contends that our decision in Cheng I "determined that New York law does not apply." Thus, she argues, awarding fees under New York law would violate the Cheng I court's mandate.

We disagree with Cheng and her interpretation of our prior decision. In Cheng I, we decided the merits of the defamation claim under overarching First Amendment principles that

- 8 -

prevented us from having to consider the state choice-of-law issue. See 51 F.4th at 443. Importantly, although the First Amendment "place[s] limits on the application of the state law of defamation," Milkovich v. Lorain J. Co., 497 U.S. 1, 14 (1990), it does not provide an independent source of federal defamation law. By finding that the statements in the Beacon article were not constitutionally actionable under the First Amendment, then, we simply held that Cheng had failed to state a claim under any state's defamation law. Or, to put it another way, we concluded that the First Amendment provided Neumann with a complete defense to a defamation claim based on the factual allegations in the complaint regardless of whether Maine or New York law applied. Accordingly, we did not need to resolve the parties' choice-of-law dispute because there was no conflict to resolve between the substantive defamation law of the two states. And because we did not decide the conflict of laws question, it was not part of our mandate on remand. See Cohen v. Brown Univ., 101 F.3d 155, 168 (1st Cir. 1996) ("The reviewing court's mandate 'constitutes the law of the case on such issues of law as were actually considered and decided by the appellate court, or as were necessarily inferred from the disposition on appeal.'" (citation omitted)); 18B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4478 (3d ed. 2023) ("Actual decision of an issue is required to

establish the law of the case.  Law of the case does not reach a matter that was not decided.").

Thus, Cheng's objection to the application of New York law based on the law of the case doctrine fails.  Neumann's success on a federal constitutional defense does not alter the fact that this is a diversity suit involving only a state law claim for defamation.  And in diversity actions, "in the absence of countervailing . . . principles," federal courts "apply state law with regard to the allowance or disallowance of attorneys' fees, as well as to the determination of the amount of the fee award." 1 Robert L. Rossi, Attorneys' Fees § 10:5 (3d ed. 2023) (footnotes omitted); see also B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc., 516 F.3d 18, 28 (1st Cir. 2008) ("Attorneys' fees are recoverable in diversity cases where a state law provides the right to recover such fees." (footnotes omitted)).

## B. The Conflict of Laws Issue

### 1. Whether a Conflict Exists

We turn next to Neumann's argument that the district court incorrectly applied Maine rather than New York law to the attorneys' fees issue.  We review this legal dispute over the choice-of-law analysis de novo.  See Levin v. Dalva Bros., 459 F.3d 68, 73 (1st Cir. 2006).  "When analyzing choice-of-law issues, federal courts sitting in diversity apply the substantive law of the forum state, here [Maine], including its conflict of laws

- 10 -

rules." Smith v. Prudential Ins. Co. of Am., 88 F.4th 40, 49 (1st 2023). As a threshold step, Maine courts consider whether any conflict exists between two states' laws before conducting a choice-of-law analysis. See Flaherty v. Allstate Ins. Co., 822 A.2d 1159, 1165 (Me. 2003) (noting that Maine and Connecticut have distinct wrongful death statutes before analyzing which state's law should apply).

The parties essentially agree that there is a conflict between Maine and New York law on the attorneys' fees issue, and the district court correctly concluded that such a conflict exists. As the parties point out, Maine has its own anti-SLAPP law, and the two states' anti-SLAPP statutes are different in important ways. First, they have distinct provisions about the availability of attorneys' fees when a complaint is dismissed. Compare N.Y. Civ. Rights Law § 70-a(1)(a) (providing that "costs and attorney's fees shall be recovered upon a demonstration" that statutory requirements are met, such that fees are mandatory (emphasis added)), with Me. Rev. Stat. tit. 14, § 556 (providing that "[i]f the court grants a special motion to dismiss, the court may award the moving party costs and reasonable attorney's fees," such that fees are discretionary (emphasis added)). Second, the statutes' scopes are different. Maine's anti-SLAPP law applies only to statements arising from the "exercise of the . . . right of petition under the Constitution of the United States or the

- 11 -

Constitution of Maine." Me. Rev. Stat. tit. 14, § 556. Although Maine's statute defines petitioning activity broadly as speech tending to influence governmental decision-making, it is generally understood not to apply to mine-run news articles like the one at issue in this case.[3] See Gaudette v. Mainely Media, LLC, 160 A.3d 539, 543 (Me. 2017) ("Maine's anti-SLAPP statute is not applicable to newspaper articles unless those articles constitute the newspaper petitioning on its own behalf or the party seeking to invoke the anti-SLAPP statute is a party that used the newspaper to broadcast the party's own petitioning activities."). By contrast, New York's statute protects a much broader swath of speech, including speech by the press in news articles on issues of public interest. See N.Y. Civ. Rights Law § 76-a(1)(a) (defining an "action involving public petition and participation" as a "claim based upon," inter alia, "any . . . lawful conduct in

---

[3] Under Maine's anti-SLAPP statute, petitioning activity includes "any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other government proceeding," and "any statement reasonably likely to enlist public participation in an effort to effect such consideration." Me. Rev. Stat. tit. 14, § 556; see Thurlow v. Nelson, 263 A.3d 494, 503 (Me. 2021) (holding that letter sent by parents of student to public school officials complaining about assistant principal was petitioning activity, "[p]articularly given the broad reach of section 556"). Still, the parties agree that Maine's anti-SLAPP statute is not at issue. Cheng argues that the statements here did not implicate petitioning activity, and Neumann notes that he never invoked the Maine statute nor moved to dismiss the complaint pursuant to it.

- 12 -

furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest").

Thus, there is a clear conflict between Maine and New York law on the attorneys' fees issue. So, we now proceed to the question of whether the district court correctly applied Maine choice-of-law rules in concluding that Maine law applies.[4]

## 2. Maine or New York Law?

Defamation is a common law tort. And under Maine law, "questions regarding . . . liability for tortious conduct are appropriately addressed pursuant to tort choice-of-law principles," which Maine courts derive from the Second Restatement of Conflict of Laws. State Farm Mut. Auto. Ins. Co. v. Koshy, 995 A.2d 651, 660 (Me. 2010); see also Flaherty, 822 A.2d at 1165.

The Restatement provides specific guidance regarding choice-of-law determinations in "[m]ultistate [d]efamation" cases like this one. Restatement (Second) of Conflict of L. § 150 (Am. L. Inst. 1971). It instructs that "[t]he rights and liabilities

---

[4] Neumann contends that there is no conflict here because he is entitled to fees under Maine's exception to the "American rule," which provides that parties usually must bear their own costs and fees in litigation unless there is "clear statutory authority" to the contrary. Indorf v. Keep, 288 A.3d 1214, 1219 (Me. 2023) (citation omitted). Section 70-a, Neumann contends, provides that clear statutory authority. But this argument assumes that Neumann is right that New York law applies to the attorneys' fees issue. We see no reason that a New York statute would provide "clear statutory authority" to award fees if Maine law governs the fees issue here. Because Neumann cites no authority to convince us otherwise, we reject this argument.

- 13 -

that arise from defamatory matter in any . . . book or newspaper, or any . . . similar aggregate communication[,] are determined by the local law of the state" that has the "most significant relationship to the occurrence and the parties." Id. § 150(1). And "[w]hen a natural person" like Cheng brings a defamation claim, "the state of most significant relationship will usually be the state where the person was domiciled at the time." Id. § 150(2). Here, there is no dispute that Cheng was "domiciled" in New York at the time Beacon published the article.[5] Thus, under section 150(2), the presumption that New York law applies can be overcome only if, "with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties." Id. § 150 cmt. b.

As the district court correctly concluded, the choice-of-law analysis must focus on the specific question here: Which state's law governs the attorneys' fees dispute? Whether the Law Court would apply section 150 to the issue of attorneys' fees in defamation suits is unclear. Although the Restatement suggests that "at least most issues involving [defamation]" should be determined by the law of the defamed party's domicile, id. § 150 cmt. e, no Maine court has applied the section 150(2) presumption

---

[5] "Domicile has two components: residence and the intent to remain. When these concur there is domicile." Margani v. Sanders, 453 A.2d 501, 503 (Me. 1982).

- 14 -

in the context of attorneys' fees. In fact, no Maine court has yet evaluated whether this presumption applies to the merits of a defamation claim.

Even if it were obvious that the Law Court would apply section 150(2), how it would answer the subsequent question -- whether Maine has a "more significant relationship" to the attorneys' fees issue, such that the presumption in favor of New York law could be overcome -- is far from clear. Several principles guide the "more significant relationship" inquiry. Id. § 145(1). The Restatement emphasizes:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum [here, Maine], (c) the relevant policies of other interested states [here, New York] and the relative interests of those states in the determination of the particular issue, . . . and (g) ease in the determination and application of the law to be applied.

Id. § 6(2); see also id. § 145 cmt. b. Maine courts put it more succinctly:

> In applying the "most significant contacts and relationships" test, it is necessary to isolate the issue, to identify the policies embraced in the laws in conflict, and finally to examine the contacts with the respective jurisdictions to determine which jurisdiction has a superior interest in having its policy or law applied.

Collins v. Trius, Inc., 663 A.2d 570, 573 (Me. 1995); see also Flaherty, 822 A.2d at 1167.

- 15 -

The district court reasoned that Maine's interest in having its fee-shifting law apply was superior to New York's interest because Neumann resides in Maine and defended against the suit in Maine. On appeal, Neumann contends that the district court's analysis failed to sufficiently account for or balance the "policies embraced in the laws in conflict" -- here, the two states' anti-SLAPP laws. Collins, 663 A.2d at 573. In Neumann's view, applying New York law would better accommodate both states' interests by giving effect to New York's broader regime without hindering Maine's interests.

Neumann is correct that New York's anti-SLAPP law reflects a broad interest in giving speech, including speech by the press, as much breathing room as possible and deterring suits like this one. New York's statute was enacted with the goal of providing "the utmost protection for the free exercise or speech, petition, and association rights." Aristocrat Plastic Surgery, P.C. v. Silva, 169 N.Y.S.3d 272, 275 (N.Y. App. Div. 2022) (citation omitted). In 2020, the New York legislature passed amendments intended to "broadly widen[] the ambit of the law" by, for example, expanding the definition of what constitutes an "action involving public petition and participation" and making an award of attorneys' fees under section 70-a mandatory, rather than permissive. Id. at 274-75. Thus, New York has expressed a strong policy interest in deterring SLAPP suits from being filed in the

first place by requiring plaintiffs to pay the costs associated with bringing a frivolous defamation claim designed to chill protected speech. See Ent. Partners Grp., Inc. v. Davis, 603 N.Y.S.2d 439, 440 (N.Y. App. Div. 1993).

Maine has taken a different approach than New York in balancing the competing interests at stake, including how much breathing room to give the press in reporting on issues of public concern, by adopting a narrower anti-SLAPP statute. Its law covers only suits that target "petitioning activity" and provides that a court "may," but not must, award attorneys' fees upon a successful motion to dismiss such a suit. Me. Rev. Stat. tit. 14, § 556. Neumann argues that Maine's decision to adopt a narrower statute than New York's does not reflect an interest in depriving Maine residents of the remedies provided by other states' anti-SLAPP laws, and thus that Maine's policy interests would not be hindered by application of New York law here.

We are not so sure. Each state's anti-SLAPP law reflects sensitive legislative judgments about how best to balance speakers' rights to speak out on issues of public concern with injured parties' rights to seek redress for alleged harms from such speech. New York law has given more leeway to more categories of speech than Maine has. Indeed, Maine deliberately chose to enact a law that allows a party to sue the press and speakers without fear of being held liable for attorneys' fees if its suit

- 17 -

is dismissed, as long as the suit does not involve "petitioning activity." And even if the suit is about petitioning activity and fails on the merits, Maine law makes clear to speakers that they are not automatically entitled to attorneys' fees for successfully defending against such a lawsuit. This is an important component of Maine's regime for plaintiffs evaluating whether to bring potentially valid defamation claims. It also impacts the actions of speakers in Maine: Those who are engaged in non-petitioning activity are on notice that they have less room for error in their speech, lest they be forced to bear the costs of defending themselves in court. Awarding fees under New York law could, at least potentially, upset this careful balance the Maine legislature has struck.

On the other hand, allowing a SLAPP plaintiff from New York to avoid fee liability simply because they sue an out-of-state resident in that resident's home court disserves New York's interest in deterring its residents from launching these types of suits at all. In an age when many communications take place over the internet, declining to apply New York law may severely impair New York's ability to regulate this aspect of its residents' conduct.

### 3. Certification

"When faced with potentially outcome-determinative questions of Maine law for which 'there is no clear controlling

- 18 -

precedent in the decisions of the Supreme Judicial Court,' a federal court may certify those questions to the Law Court 'for instructions' on how to rule." Mundell v. Acadia Hosp. Corp., 92 F.4th 1, 6 (1st Cir. 2024) (quoting Me. R. App. P. 25). Of course, we do not certify every time a difficult question of state law arises. See Plourde v. Sorin Grp. USA, Inc., 23 F.4th 29, 36 (1st Cir. 2022) (explaining that we employ certification judiciously so as "not to bother our busy state colleagues with every difficult state-law issue that comes our way"). So long as the "answer to [a] question is 'sufficiently clear to allow us to predict [the Law Court's] course,'" we will answer it ourselves. R.I. Truck Ctr., LLC v. Daimler Trucks N. Am., LLC, 92 F.4th 330, 348 (1st Cir. 2024) (quoting Hosp. San Antonio, Inc. v. Oquendo-Lorenzo, 47 F.4th 1, 6 (1st Cir. 2022)). But when "the answer[] to the[] question[] may hinge on policy judgments best left to the [state] court," In re Engage, Inc., 544 F.3d 50, 53 (1st Cir. 2008), and "the outcome [the court would reach is] far from certain," Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 51 (1st Cir. 2013), certification is prudent. Our Maine colleagues, in turn, will exercise their discretion to answer certified questions "when three criteria are met: (1) there is no dispute as to the material facts at issue; (2) there is no clear controlling precedent; and (3) [their] answer, in at least one alternative,

would be determinative of the case." Franchini v. Inv.'s Bus. Daily, Inc., 268 A.3d 863, 865-66 (Me. 2022) (citation omitted).

Both our criteria for certifying a question and, in our view, Maine's criteria for answering it are met in this case. First, and most importantly, there is no controlling precedent on point. The Law Court has not established a legal standard for evaluating choice-of-law issues in a defamation action; as such, we cannot say definitively if it would adopt the section 150(2) presumption. Even if it were to apply this presumption to "most" issues in a defamation action, we do not know if attorneys' fees liability is among those issues. And even if the presumption applied here, the outcome the Law Court would reach in determining whether Maine has a superior interest in consistently regulating the speech of its residents than New York has in deterring its residents from filing meritless lawsuits is "far from certain." Easthampton Sav. Bank, 736 F.3d at 51.

Second, assuming the presumption applies, the superior interest inquiry may turn upon a policy judgment that would have "implications beyond these parties": whether the goals of Maine's or New York's anti-SLAPP regime would be more harmed by the imposition of fees against a New York resident who brings a meritless defamation claim against a Maine resident. See In re Engage, Inc., 544 F.3d at 53. And, although "we often resolve questions of state law that affect many, certification is more

appropriate" when, like here, the "policy arguments" do not "line up solely behind one solution." Patel v. 7-Eleven, Inc., 8 F.4th 26, 29 (1st Cir. 2021) (quoting In re Engage, Inc., 544 F.3d at 57). Finally, we note that the outcome here may well impact how often out-of-state plaintiffs choose to file defamation claims in Maine's courts. As for the Law Court's additional criteria, no disputes of material fact exist, and its decision would be determinative of this case. If the Law Court were to find that New York law applies, then Neumann would be entitled to seek fees. And if Maine law applies, then Neumann's quest for fees ends. Accordingly, rather than hazard a guess on the choice-of-law issue, we certify the question to the Law Court.[6]

### III. CONCLUSION

For all these reasons, we **certify** the following question to the Supreme Judicial Court of Maine:

> Under Maine's conflict of laws rules, does Maine's or New York's anti-SLAPP law govern a New York plaintiff's fee liability after its defamation claim against a Maine resident for speech in Maine has been dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under overarching First Amendment principles?

The clerk of this court is directed to forward to the Law Court, under the official seal of this court, a copy of the

---

[6] Although neither party requested certification, we may certify questions sua sponte. See Easthampton Sav. Bank, 736 F.3d at 50 n.4.

- 21 -

certified question and our decision in this case, along with copies of the briefs filed by the parties in this appeal, which provide all facts relevant to the issue certified. We retain jurisdiction pending the Law Court's determination.